ENUS ALLIE, PETITIONER-RESPONDENT, v. BARRETT & COMPANY, INC., RESPONDENT-APPELLANT.

Essex County Court
Law Division

Decided April 21, 1961.

*Mr. Nathan H. Sisselman* argued the cause for petitioner-respondent (*Messrs. Addonizio, Sisselman, Nitti & Gordon,* attorneys).

*Mr. Isidor Kalisch* argued the cause for respondent-appellant.

LYONS, J. C. C. Petitioner suffered a crushing injury to his left hand when it was drawn into a wringer by reason of the slippage of a clutch. The fact that a compensable accident had occurred was admitted. Permanent disability was awarded for 60% of the hand, in the amount of $5,232.50, and for 5% of total for post-traumatic neurosis, or $962.50. Petitioner's attorneys were awarded counsel fee of $900, payable $500 by respondent and $400 by petitioner.

The amount of counsel fee is the only element of the judgment under attack. Respondent claims that it had made a timely offer in the amount of 50% of the hand, and had therewith tendered payment of $805, representing payment for 23 weeks then due, and that the judge of compensation erred in concluding that the offer was not *bona fide* and in basing the counsel fee on the total award.

A brief review of events from the date of the accident to the making of the award reveals the following significant factors.

The accident occurred July 20, 1959. Petitioner was under the medical care of respondent from that date until discharge from treatment on November 16. The first three or four days were spent in St. James Hospital, where an operation was performed. He was then sent to N. J. Manufacturers' Hospital where treatment ranged from pills and changes of dressings in the first month to whirlpool and exercise treatment in the final months. The exercises, which included squeezing a ball with the injured hand, brought about no improvement in his condition. He was paid temporary disability for 17 weeks.

Upon discharge from treatment he reported to his employer for work, as he had been directed, but was told that they could not use him at that time because they had no "one-hand work." The employer promised to call him when there was something for him to do. Commencing January 4, 1960 he was put to work with light leather on a table machine, and he would work from one to four hours per day until the work gave out. Though there was other work available, he was unable to do it because it involved the use of both hands. A major problem in the use of the hand lies in the loss of gripping power due to the fact that soft tissue injury prevents him from making a fist. Dr. Willner, petitioner's examining physician, said that all of the fingers missed the palm by two inches, while Dr. Firtel, testifying for respondent, found that the fourth finger was one-quarter inch from the palm and that there was increased restriction in the other fingers.

On January 15, 1960 a claim petition was filed, alleging the hand injury and neurological involvement. Respondent was served on February 10 and filed its answer on February 15. In response to Question 11, "Nature of injury and resultant permanent disability," the respondent answered, "Undetermined in view of 26 week waiting period."

Dr. Firtel examined petitioner on March 21, 1960. He appraised disability at 50% of the hand. There was no proof offered as to when respondent transmitted its request from examination to the doctor. We are left merely with the conclusion of the doctor that it must have been more than a week or two before the date of examination since it usually takes several weeks for him to arrange with a petitioner's attorney to have a claimant come in for examination. It was stipulated that the physician's report was dated March 29 and that it reached the insurance carrier on April 4, 1960.

Sometime between April 8 and 10 petitioner received by way of his employer a "Memorandum of Payment" from the insurance carrier, stating his permanent compensation

to be 50% of the left hand. There was forwarded to his home a check for $805 in payment of 23 weeks of permanent disability then due. On April 12 petitioner's counsel was served with a notice of motion to amend the answer to Question 11 to read: "50% of left hand." Counsel was further notified that "Respondent herein tenders the payment of 115 weeks additional compensation for permanent disability at the rate of $35.00 per week."

On the factor of the timeliness of the respondent's offer to pay compensation Dr. Willner and Dr. Firtel offered opposing testimony.

Dr. Willner examined on January 5 and June 29, 1960, the latter being the date of trial. Though this witness stated at two points in his testimony that he had made another examination on March 1, he later corrected this by saying that March 1 was the date when he received the hospital reports and that petitioner had not been sent to him for examination on that date. The doctor diagnosed the hand condition as follows: severe compression type of injury to the entire hand, causing flexion contracture of all the fingers and causing marked restriction of motion of all the metacarpal phalangeal joints of all fingers and of the interphalangeal joints. On each examination the witness estimated disability at 85% of the hand.

He testified that his assessment of disability on the first examination was made with the idea that that represented not merely existing disability, but disability permanent in nature, and that the subsequent examination was not made because of the feeling that some change might have occurred. The final examination was not performed at the doctor's office, and the reason for performing it was that "the last examination was six months old." This witness was of opinion that the disability could have been reasonably evaluated at the time of discharge in mid-November. In the course of cross-examination, however, he admitted that this is the "type of hand" that might become better, become worse, or remain stationary, and that in some cases there

might be some improvement with use while in others restriction might become greater. He asserted that at the time of his first examination the maximum amount of improvement had been attained.

Dr. Firtel testified in a different vein. It was his thought that the possibility of change in this type of condition made it necessary to wait for a reasonable time after discharge from treatment before determining the permanent disability. Discharge from treatment, he said, marks the point where the maximum benefit from medical therapy has been achieved and it is then to be determined whether or not occupational therapy will bring about further improvement. He stated that since petitioner had used the hand for two and a half months in his work prior to the March examination, improvement, if any were to occur, would have manifested itself. However, when asked to assume that petitioner testified that "he has little if no use of his hand on his employment," he said: "Then we know that the employment will not have any effect on the hand," and he added: "And that we certainly are in a position to estimate the permanent disability."

The statute dealing expressly with the effect on counsel fees of timely offers of compensation for permanent disability is found in *N. J. S. A.* 34:15–64, as follows:

"When, however, at a reasonable time, prior to any hearing compensation has been offered and the amount then due has been tendered in good faith or paid, the reasonable allowance for attorney fee shall be based upon only that part of the judgment or award in excess of the amount of compensation, theretofore offered, tendered in good faith or paid."

The respondent argued that the foregoing provision has been considerably modified by the following language found in *N. J. S. A.* 34:15–16:

"* * * permanent disability, total or partial, shall not be determined or awarded until after 26 weeks from the date of the employee's final active medical treatment, or until after 26 weeks

from the date of the employee's return to work, whichever is earlier, or, if no time is lost or no treatment is rendered, then permanent disability, total or partial, shall not be determined or awarded until after 26 weeks from the date of the accident, except in cases of amputation or enucleation or death from other cause within that time and except when earlier determination of permanent disability is waived by the employer or his insurance carrier. Nothing herein contained shall prevent an employer or his insurance carrier from paying permanent disability compensation voluntarily prior to the expiration of the 26 week period."

It is urged that since the quoted language from *N. J. S. A.* 34:15–16 came about by enactment subsequent to the provisions of *N. J. S. A.* 34:15–64, the provision for a 26-week waiting period before a determination or award can be made "controls" the earlier enactment, so as to make it permissible and justifiable for an employer to refrain from making an offer until such time during the waiting period as it is reasonably apprised by its medical expert as to the disability he found.

This contention seems too broad. The cited statutes deal with different phases of the administration of the Workmen's Compensation Act. *N. J. S. A.* 34:15–16 merely sets up a bar of 26 weeks before permanent disability can be *determined* or *awarded*. It is general in its terms and applies to all controverted causes that come before the Division. There is no conflict between the two sections of the act that are here being considered, and I can see no reason to conclude that the Legislature by the waiting-period statute intended to set up a period of repose in all cases in respect to the performance of the obligation imposed upon an employer by *N. J. S. A.* 34:15–64 to act with due dispatch in according an employee the benefits due him following a conceded work-connected accidental injury. Indeed, such a conclusion would seem to be contrary to the provision empowering an employer or his carrier to make voluntary payments of compensation prior to the running of the 26-week period. The beneficent purposes that the Legislature had in mind in enacting *N. J. S. A.* 34:15–64

in its present form are set forth in *Moore v. Magor Car Corp.*, 27 *N. J.* 82 (1958), in the following language:

"In our judgment, the appraisal of the legislative language must be made in the light of the basic duty imposed upon the employer by the act in its entirety. After adequate notice of a covered work connected accident and resulting disability, the obligation of the employer or the insurance carrier is to pay promptly the benefits provided by the legislative mandate and to continue to do so during the full period of temporary and permanent incapacity. * * * Refusal or failure to comply with this affirmative obligation for an unreasonable period justifies the engagement of an attorney and the invocation of the formal procedure for adjudication of the rights of the parties.

Manifestly, the lawmakers had a dual purpose in promulgating the 1952 amendment. One was to give greater protection to the claimant's attorney who invests substantial time and effort in his client's cause prior to the offer to pay compensation. *Davala v. American Bridge Co.*, 36 *N. J. Super.* 274, 279 (*App. Div.* 1955). The other was to create additional incentive for a prompt response by the employer to the workman's claim for benefits. Thus, the more liberal provision for remuneration for professional services rendered must be administered with an eye to the timely character of the employer's performance in discharging his duty."

In *Coponi v. Federal Industries*, 31 *N. J.* 1 (1959), the argument was presented that by virtue of *N. J. S. A.* 34:15–16 the employer was under no obligation to offer to pay any specific percentage of permanent disability until the waiting period provided for in the statute had expired. The court held that this section had no applicability under the facts presented in that case, but it remarked that the cited statute "may play a role in determining whether an offer was made within a reasonable time."

I am of opinion that *N. J. S. A.* 34:15–16 has not effected any essential change in the scope and application of *N. J. S. A.* 34:15–64. The reasonableness of an employer's course of action under all of the facts and circumstances found in a particular case still remains the criterion by which the right to abatement of counsel fee should be determined.

In the instant case I feel that the offer of permanent disability came too late. The nature of petitioner's injury,

the complete control maintained by the carrier over his treatment which lasted almost four months, the fact that petitioner did not respond to the therapeutic exercises prescribed at the hospital, the failure of the carrier to check upon his condition following his discharge from treatment, and the failure to make any provision for permanent disability benefits for such a long period of time, cast grave doubt upon the *bona fides* of respondent in relation to the performance of its duty to petitioner. What happened when the employee first applied to be put back to work in mid-November and the long lapse of time to January 4 when the employer finally found some "one-hand" work for him to do bespeak no solicitude for petitioner's welfare. This is not a case where the employer might reasonably assume that permanent disability would be minimal in character. The facts make it appear certain that substantial disability would be the final result, and yet the employer or carrier did nothing until some time after the employee moved by petition to obtain workmen's compensation benefits.

I find that the counsel fee allowed in the Workmen's Compensation Division was properly assessed. A judgment, consented to as to form, may be submitted.