865 A.2d 735 (2005)
374 N.J. Super. 513
Anthony GORMAN, Petitioner-Respondent,
v.
WATERS & BUGBEE, INC., Respondent-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued January 5, 2005.
Decided February 2, 2005.
Francis T. Giuliano, Ramsey, argued the cause for appellant (Mr. Giuliano, of counsel and on the brief; David P. Kendall, on the brief).
Gary E. Adams, Princeton, argued the cause for respondent (Pellettieri, Rabstein & Altman, attorneys; Mr. Adams, of counsel and on the brief).
Before Judges NEWMAN, AXELRAD and R.B. COLEMAN.
The opinion of the court was delivered by
*736 NEWMAN, P.J.A.D.
Under N.J.S.A. 34:15-64(c), where an employer makes a timely voluntary tender to its employee of a payment for permanent partial disability within twenty-six weeks of the date of the final active medical treatment, the employer is relieved from paying an attorney's fee on that portion of the disability award representing the amount of the voluntary payment. Here, the Workers' Compensation judge ruled that the voluntary tender of payment was not timely because it was made beyond the twenty-six week period and awarded petitioner's counsel an attorney's fee in the amount of $13,365, of which $8181 was payable by the employer. Respondent, Waters & Bugbee, Inc., the employer, appeals contending that although its insurance carrier, New Jersey Manufacturer's (NJM) payment occurred in the twenty-seventh week, it was at a reasonable time before the hearing to determine the extent of petitioner's permanent partial disability and should have been considered timely. We are persuaded that the judge was correct in finding the voluntary payment by the employer's insurance carrier as untimely and affirm.
The facts are not in dispute. Petitioner, Anthony Gorman, sustained a back injury while working for his employer, on August 1, 2000. The employer was notified immediately and accepted the accident as compensable. The employer's Workers' Compensation insurance carrier, NJM, provided medical care and made temporary disability payments to petitioner. Petitioner did not return to work after the injury.
Petitioner filed a claim petition on August 15, 2001. In its answer, the employer acknowledged that petitioner had sustained a compensable injury while at work, but also invoked the "26-week rule" (N.J.S.A. 34:15-16) to determine total disability.
Petitioner's claim petition was first listed for hearing on June 10, 2002. That hearing was adjourned because petitioner was still actively receiving medical treatment. Petitioner last received active medical treatment on July 29, 2002.
The claim petition was next listed for a hearing on November 25, 2002. That hearing was also adjourned because: (1) twenty-six weeks had not yet elapsed from petitioner's last medical treatment as set forth in N.J.S.A. 34:15-16, and (2) petitioner had not yet obtained medical evaluations regarding the nature and extent of his permanent partial disability.
On December 5, 2002, the employer and NJM initiated discussions toward making a voluntary tender of permanent partial disability payments in accordance with N.J.S.A. 34:15-64, when they were made aware that petitioner was "destitute."
On January 20, 2003, the employer approved making a voluntary tender to petitioner.
On January 22, 2003, the employer's medical expert examined petitioner and evaluated the extent of his disability. The expert prepared a written report dated January 29, 2003.
On January 29, 2003, NJM notified petitioner by letter of its intention to make a voluntary tender.
On January 30, 2003, NJM's Disbursing Department received the voluntary tender letter for processing and disbursement.
On February 3, 2003, NJM issued a check for $9456.36, which was received by petitioner on February 6, 2003.
A hearing was scheduled for November 19, 2003, at which time the parties agreed that petitioner sustained a permanent partial disability in the amount of 37-1/2 percent *737 of total and settled petitioner's claim on those terms. The Workers' Compensation Judge approved the settlement.
The parties disagreed whether the employer's voluntary tender had been timely made in accordance with the provisions of N.J.S.A. 34:15-64. The Workers' Compensation Judge found that the voluntary tender was not timely, finding that the voluntary tender was not made within twenty-six weeks of the employee's final active medical treatment.
N.J.S.A. 34:15-64(c) provides in relevant part:
When however, at a reasonable time, prior to any hearing compensation has been offered and the amount then due has been tendered in good faith or paid within 26 weeks from the date of the notification to the employer of an accident or an occupational disease or the employee's final active medical treatment or within 26 weeks after the employee's return to work whichever is later or within 26 weeks after employer's notification of the employee's death, the reasonable allowance for attorney fee shall be based upon only that part of the judgment or award in excess of the amount of compensation, theretofore offered, tendered in good faith or paid.
[emphasis added.]
Initially, we note that the Workers' Compensation Judge considered the hearing dates scheduled in June and November 2002, but adjourned were in fact "hearings" under the statute. The employer contends that neither the pretrial listing in June 2002 nor November 2002 constituted a hearing as contemplated by the statute and therefore, its voluntary tender occurred prior to the only hearing in the matter on November 19, 2003. We agree.
This court has ruled that an adjournment is not a hearing for the purposes of determining whether the employer's voluntary tender was made pursuant to N.J.S.A. 34:15-64(c). See Miller v. Joseph Savino & Son, Inc., 259 N.J.Super. 425, 614 A.2d 160 (App.Div.1992), certif. denied, 133 N.J. 431, 627 A.2d 1137 (1993). In Miller, a pretrial hearing was scheduled for June 19, 1990. Id. at 427, 614 A.2d at 161. Prior to the pretrial hearing, the employee requested and was granted an adjournment of three cycles in order to determine whether he might still require additional medical treatment. Ibid. Subsequently, the employee was examined and it was determined that he did not require any additional medical treatment. Ibid. On August 2, 1990, the employer made a voluntary tender to the employee. Ibid. The pretrial hearing eventually was scheduled and held on February 5, 1991. Id. at 428, 614 A.2d at 161.
In reversing the Workers' Compensation Judge's decision that the tender was not timely, we held that the voluntary tender was made within a reasonable time prior to any hearing. Id. at 429, 614 A.2d at 162. Although we did not discuss the adjournment on June 19, 1990, we obviously considered the hearing on February 5, 1991 to be the only hearing held in that matter.
So too here. The hearings were postponed on June 10, 2002 and November 25, 2002. The June hearing was postponed because petitioner was not done with his treatment and the extent of his injuries had yet to be determined. The November hearing was postponed because twenty-six weeks had not yet elapsed from the time of petitioner's final active medical treatment and, as a result, the nature and extent of petitioner's permanent disability could not yet be adjudicated pursuant to N.J.S.A. 34:15-16. Like Miller, the hearings were adjourned until the full extent of *738 petitioner's disability could be assessed. That was precisely what occurred here.
An adjournment of a case because the parties are not in a position to present proofs on the extent of a petitioner's injury does not constitute a hearing. Put another way, the mere listing of a case to track its progress or to hold a status conference is not a hearing. Where, however, the parties have assembled their medical proofs on the extent of petitioner's disability, and are in a position to proceed to trial, the scheduled court proceeding may be the equivalent of a hearing even were no hearing begun which, for example, could be the result of the court's own trial schedule. We merely provide these parameters as guidelines to conform to the scheduling of cases in the Workers' Compensation venue. Here, of course, the voluntary tender was made well in advance of the November 19, 2003 hearing. However, that does not end the inquiry. The critical issue was whether the voluntary tender was made within twenty-six weeks of the date of petitioner's final active medical treatment.
The employer argues that the voluntary tender need only be made at a "reasonable time" prior to any hearing and need not necessarily be made within twenty-six weeks of the final active medical treatment. Petitioner disagrees and asserts that a voluntary tender must be made at a reasonable time prior to any hearing "and" must be made within twenty-six weeks of one of the enumerated events in the statute. We agree with petitioner's position.
Prior to 1952, the voluntary tender rule was set forth as follows: "[W]hen, however, prior to any hearing compensation has been offered or paid, the reasonable allowance for attorney fee shall be based upon only that part of the judgment or award in excess of the amount of compensation theretofore offered or paid. L. 1927, c. 324." Moore v. Magor Car Corp., 27 N.J. 82, 85, 141 A.2d 536, 537 (1958).
In 1952 the Legislature amended N.J.S.A. 34:15-64 to require that the voluntary tender be made "at a reasonable time prior" to any hearing. See Moore, 27 N.J. at 86, 141 A.2d 536. Before this change, employers could avoid paying "counsel fees simply by tendering an offer of settlement immediately prior to any hearing." Ibid. at 86, 141 A.2d at 538. The Supreme Court in Moore recognized that the Legislature had twin objectives in mind in amending the statute:
[The first] was to give greater protection to the claimant's attorney who invests substantial time and effort in his client's cause prior to the offer to pay compensation. Davala v. American Bridge Co., 36 N.J.Super. 274, 279, 115 A.2d 581[, 584] (App.Div.1955). The [second] was to create additional incentive for a prompt response by the employer to the workman's claim for benefits.
[Id. at 87, 141 A.2d at 538.]
The Court concluded that "the more liberal provision for remuneration for professional services rendered must be administered with an eye to the timely character of the employer's performance in discharging his duty." Ibid.
In 1979, the Legislature amended the statute again to its present form. While the Legislature retained the language that the voluntary tender be made at a reasonable time prior to any hearing, the statute expressly required that the amount offered also "be tendered in good faith or paid within 26 weeks from" one of the following enumerated events, whichever is later: "the date of the notification to the employer of an accident," the date of the "employee's final active medical treatment," or the date the "employee[ ] return[ed] to work." N.J.S.A. 34:15-64(c).
*739 The Joint Statement to Senate Committee substitute for Senate Bill No. 802 and Assembly Committee substitute for Assembly Bill No. 840 made clear in its statement that the revision of the compensation law was to "make available additional dollars for benefits to seriously disabled workers while eliminating, clarifying or tightening awards of compensation based upon minor permanent partial disabilities not related to the employment." State Labor, Industry and Professions Committee, Joint Statement to S. 802 and A. 840 (November 13, 1979). With specific reference to the issue in question here, the Statement had this to say:
The bill would limit the base upon which to determine attorney fees, to be paid by the worker or his dependents and by the employer, to the amount awarded beyond an employer's offer, providing that offer was made within designated time frames.
[Ibid.]
In a press release accompanying the enactment of the Bill on January 10, 1980, Governor Byrne indicated that:
[t]he period in which an employer may offer a settlement has been limited to six months after notification, final medical treatment or return to work (whichever is later), rather than up to the final hearing date.
[Press Release, Governor Brendan Byrne Signed S. 802 (Jan. 10, 1980) (on file with S. 802).]
The obvious intent of this clause is to have a bright line timeframe within which the voluntary tender or payment may be made to reduce the amount which the employer will have to contribute toward petitioner's attorney fees. The advantage of a bright line rule is that the employer knows from certain dates the timeframe within which to make the payment to receive the reduction of its contribution to the attorney fees award.
N.J.S.A. 34:15-16 operates in conjunction with the provisions of N.J.S.A. 34:15-64 by providing:
Following both, either or none of the above, compensation consecutively for each permanent injury, except that permanent disability, total or partial, shall not be determined or awarded until after 26 weeks from the date of the employee's final active medical treatment, or until after 26 weeks from the date of the employee's return to work, whichever is earlier, or, if no time is lost or no treatment rendered, then permanent disability, total or partial, shall not be determined or awarded until after 26 weeks from the date of the accident, except in cases of amputation or enucleation or death from other cause within that time and except when earlier determination of permanent disability is waived by the employer or his insurance carrier. Nothing herein contained shall prevent an employer or his insurance carrier from paying permanent disability compensation voluntarily prior to the expiration of the 26-week period.
[N.J.S.A. 34:15-16.]
As N.J.S.A. 34:15-16 indicates, the employer or his insurance carrier is not discouraged from making a voluntary payment even prior to the expiration of the twenty-six week periods. Viewed in pari materia with N.J.S.A. 34:15-64, the twenty-six week period marks the expiration of the last date at which time payment can be made if the employer is to benefit from a reduced contribution to the attorney fees award. At the same time, the petitioner receives more expeditious payment which, as in this case, he may be in dire need of.
Miller v. Joseph Savino & Son, Inc., supra, does not call for a different result. There, the employee permanently injured *740 his eye in a work-related accident on June 20, 1989. Id. at 426, 614 A.2d at 161. On May 24, 1990, the employee advised the employer that he "needed additional treatment and requested authorization for the same." Id. at 427, 614 A.2d at 161. The employee was then reexamined on July 31, 1990, and by a letter dated August 2, 1990, the doctor advised the employer that the employee continued to have 100 percent permanent disability and would not benefit from any further medical treatment. Ibid. The employer made a voluntary tender to the employee on August 2, 1990. Ibid.
At trial, the Workers' Compensation Judge awarded the employee benefits for 100 percent of the right eye and fifteen percent of partial total for the residuals of the structural changes to that eye and for a post-traumatic stress disorder. Id. at 428, 614 A.2d at 161. The Judge initially awarded attorney fees of $6500, $4000 of which was to be paid by respondent and $2500 by petitioner. Ibid. However, subsequently, the Judge increased the attorney fees to $11,500, concluding that respondent's offer was not made within a reasonable time because it was made more than twenty-six weeks after the date of the accident, more than twenty-six weeks after the final active medical treatment and more than 26 weeks from the date of the last temporary disability payment. Id. at 428-29, 614 A.2d at 162. We reversed the Workers' Compensation Judge stating that
because petitioner requested further medical treatment, respondent's offer of compensation was reasonable even though it was made after the expiration of all of the 26 week periods set forth in the statute. To arrive at a contrary conclusion would undermine an important purpose of the legislation and place employers in an untenable position. Employers would be forced to offer compensation and make a tender of payment within the 26 week period to obtain the benefits of the statute even though further medical treatment may be requested or needed. Our Legislature could not have intended this and we will not countenance such a result in this case. If further treatment is requested, an employer should be afforded reasonable time to conduct further medical examinations and determine whether such treatment is necessary. If the treatment is necessary it should be provided. Therefore, the request for further treatment must extend the time within which an offer of compensation and tender of payment may be made under the statute.
[Id. at 430-31, 614 A.2d at 163.]
Here, there was no request for additional medical treatment by petitioner nor was there any need for treatment so that there was no necessity to extend the twenty-six week period. Petitioner did not return to work so the relevant measuring date under the statute was the date of final active medical treatment which took place on July 29, 2002. The employer did not make the voluntary tender within the twenty-six weeks after the final active medical treatment with the actual tender occurring on February 3, 2003 which is in the twenty-seventh week.
One of the prime purposes of the 1979 amendment to N.J.S.A. 34:15-64 was to encourage employers to make voluntary tenders within fixed timeframes. While the employer commenced discussions with the carrier in December 2002, those discussions did not result in a voluntary tender being made within the enumerated twenty-six week period. Whether discussions could have been expedited by tendering payments within the appropriate timeframe is not discernable on this record nor need it be. We are convinced that it accords with the Legislature's intention that *741 the twenty-six week period is a bright line rule and it was not timely satisfied by the employer.
In the alternative, the employer argues that even if it did not fully comply with the requirements of N.J.S.A. 34:15-64 in making its voluntary tender to petitioner, it substantially complied and should be accorded the benefit of the fee contribution reduction afforded by the statutory provision. We are convinced that the application of a substantial compliance doctrine to this legislation would eviscerate the purpose of the statute. See Moore, supra, 27 N.J. at 89, 141 A.2d at 539-40. The fixed timeframes provide sufficient notice to the employer and insurance carrier of the deadlines to meet in order to receive the statute's benefits. Were we to indulge in an examination of whether the statute has been substantially complied with by a tardy voluntary tender or payment, the Workers' Compensation court would be engaged in additional and unnecessary fact-finding which could further delay the payment and receipt of benefits to injured petitioners. The bright line rule which, as we understand it, has been followed in the compensation courts is easy to administer, preserves the court's time and resources and promotes the legislative objective of timely payment to petitioners. Ibid. The substantial compliance doctrine is inapplicable under these circumstances.
Affirmed.