937 A.2d 1000 (2008)
397 N.J. Super. 418
Aaliyah N. ALVARADO, by Tanisha VELEZ, Guardian ad Litem of Aaliyah N. Alvardo, Petitioner-Appellant
v.
J & J SNACK FOODS CORP., Respondent-Respondent.
Superior Court of New Jersey, Appellate Division.
Submitted November 5, 2007.
Decided January 8, 2008.
*1001 Gerald F. Miksis, Atlantic City, for appellant (Jonathan E. Diego, on the brief).
Edward H. Keiper, Pennsauken, for respondent (Florence A. Lamb, on the brief).
Before Judges A.A. RODRÍGUEZ, COLLESTER and C.L. MINIMAN.
The opinion of the court was delivered by
C.L. MINIMAN, J.A.D.
Petitioner Aaliyah Nicole Alvarado appeals from that portion of the Workers' Compensation order limiting the award of fees to Alvarado's attorney on the ground that N.J.S.A. 34:15-64(c) did not permit the Workers' Compensation judge to award more than $50. The judge also found that, even if there was an exception to that statute, respondent J & J Snack Foods Corp. (J & J), the employer of *1002 petitioner's decedent (her father, Rafael Alvarado, Jr.), acted in good faith and with reasonable diligence in the face of competing claims for benefits, which the respondent was not able to resolve by agreement of all parties. Because the judge incorrectly construed and applied the statute, we reverse.
Decedent was employed by J & J as a forklift operator. On April 12, 2005, Rafael died of injuries sustained at work as a result of a fall from a forklift. On April 27, 2005, a claim petition was filed on behalf of Aaliyah, born March 28, 2002, the youngest of his three natural-born minor daughters. Two months later Aaliyah's mother, Tanisha Velez, filed a pro se petition on her own behalf as the dependent domestic partner of Rafael. Tanisha and Aaliyah resided with Rafael prior to his death. Tanisha was unemployed and she and Aaliyah depended solely on Rafael for their support. Another claim petition was filed on June 28, 2005, on behalf of Rafael's two other daughters, Jazmine Alvarado, born January 21, 1991, and Melissa Alvarado, born September 25, 1993, by their guardian ad litem and mother, Kelly Negron.
J & J deemed Rafael's death compensable on June 9, 2005. It acknowledged its obligation to provide the seventy-percent dependent benefit rate in the amount of $430.18 per week to those persons who were Rafael's dependents but did not admit that Aaliyah and Tanisha were among them. Thereafter, Tanisha admitted in interrogatory answers that she and Rafael had never been married and stipulated on September 20, 2005, that she was not entitled to workers' compensation dependency benefits.
Although J & J tried to secure agreement between the guardians of Rafael's three daughters respecting a pro rata sharing of the total benefit, it was not able to do so in the months following Rafael's death. Aaliyah argued that Melissa and Jazmine, who did not live with Rafael, were only partially dependent on him to the extent of the $173 per week Rafael paid in child support. Aaliyah urged that the benefits should be shared in accordance with a formula approved in Ricciardi v. Damar Products Co., 45 N.J. 54, 211 A.2d 347 (1965).
With the proper allocation of benefits still unresolved twenty-five weeks after Rafael's death, J & J disbursed dependency benefits on October 6, 2005, in equal shares to Rafael's three daughters "pending a court order or agreement as between parties." J & J advised "that the continuing dependency benefits will be paid on a monthly basis until further notice by the court and/or information from the parties that there is agreement as to distribution pending court order." J & J specifically took no position on apportionment.
After negotiations, Aaliyah ultimately offered to settle the allocation by accepting one-half of the benefits with the balance payable to Melissa and Jazmine. They agreed.
On February 22, 2006, the petitioners notified J & J that they had agreed that Aaliyah would receive fifty percent of the dependency benefits and Melissa and Jazmine would each receive twenty-five percent. Aaliyah's total benefit through age eighteen would amount to $167,270 with additional sums if she enrolled in college and remained dependent. On February 27, 2006, Aaliyah asked J & J for a form of order to submit the following day when the parties were scheduled to appear in court.[1] Negotiations over the form of *1003 order ensued and on March 3, 2006, Aaliyah requested she be paid her full one-half share retroactive to April 12, 2005. On March 8, 2006, a proposed form of order was circulated. Aaliyah's attorney proposed changes to the form of order, including the allowance of counsel fees, $11,615 to be assessed against J & J and $7,743 against Aaliyah.
On July 25, 2006, counsel appeared before the compensation judge and argued Aaliyah's attorney-fee application. Prior to this time, there had been pretrial or status conferences scheduled on August 24, September 13, October 4, and December 6, 2005, as well as February 28 and March 21, 2006.[2] Because J & J made an offer to pay full dependency benefits within twenty-six weeks of Rafael's death, the judge concluded that the employer was entitled to the limitation on an attorney-fee award set forth in N.J.S.A. 34:15-64(c), which confines an award to twenty percent of the difference between the benefits offered and benefits awarded when an offer has been made within a reasonable time. The judge further found that he was limited to awarding $50 in attorney fees without regard to the amount of work done because J & J offered to pay full benefits and, thus, the benefits secured could not exceed the benefits offered. The judge also found that the investigation done by J & J was certainly reasonable and he opined that the three children should share equally in the dependency benefits.
Additional pretrial conferences took place on September 26 and October 17, 2006. Ultimately, the case was resolved at the last pretrial conference on December 19, 2006, when the compensation judge entered two final orders. One order was by consent with respect to the dependency claims, awarding fifty percent of the benefits to Aaliyah, and the other order memorialized the July 25, 2006, ruling on the counsel fee application of Aaliyah, awarding $50 to her attorney pursuant to N.J.S.A. 34:15-64(c). This appeal followed.
The fee statute in question permits a judge of compensation to award a reasonable attorney fee not exceeding twenty percent of the judgment. N.J.S.A. 34:15-64(a). It further provides:
A fee shall be allowed at the discretion of the judge of compensation when, in the official's judgment, the services of an attorney . . . are necessary for the proper presentation of the case. . . . When, however, at a reasonable time, prior to any hearing compensation has been offered and the amount then due has been tendered in good faith or paid . . . within 26 weeks after employer's notification of the employee's death, the reasonable allowance for attorney fee shall be based upon only that part of the judgment or award in excess of the amount of compensation, theretofore offered, tendered in good faith or paid. When the amount of the judgment, or when that part of the judgment or award in excess of compensation, offered, tendered in good faith or paid as aforesaid, is less than $200, an attorney fee may be allowed not in excess of $50. [N.J.S.A. 34:15-64(c).]
Aaliyah contends that her attorney was entitled to receive a reasonable fee for the services he provided between the preparation of her dependency petition in April 2005 and the entry of the final orders of December 19, 2006, and that J & J should pay eighty percent of the fee. She argues that mailing benefit checks on October 6, 2005, was not within a reasonable time *1004 after Rafael's death nor prior to a scheduled hearing as required. This is so, she argues, first because of various delays caused by J & J, such as its failure to contact its insurance carrier timely and to answer the petitions within ten days of receipt. Second, she argues that J & J did not act in good faith when it disputed Aaliyah's entitlement to dependency benefits in its answer to her petition. Third, she argues that there was no good faith reason to wait almost six months before payment was finally issued. Aaliyah also argues that the October 6, 2005, offer to pay benefits in equal shares was conditioned on a final order of the court and thus did not meet the requirements of our case law for an unconditional tender.
J & J, on the other hand, argues that the Legislature created a bright line, twenty-six weeks, for determining whether payments were made within a reasonable time and that this period is intended to permit the respondent to investigate the claims, including the claimants' status as dependents and the proper allocation of benefits. Having paid benefits prior to the expiration of twenty-six weeks, it claims that it is immune from any award of fees in excess of $50.
The standard for appellate review of a determination by a judge of compensation is equivalent to that used for review of any non-jury case. Brock v. Pub. Serv. Elec. & Gas Co., 149 N.J. 378, 383, 693 A.2d 894 (1997). We may not substitute our own fact-finding for that of the trial judge, even if we are inclined to do so. Lombardo v. Revlon, Inc., 328 N.J.Super. 484, 488, 746 A.2d 475 (App. Div.2000). Rather, we will only decide "`whether the findings made could reasonably have been reached on sufficient credible evidence present in the record,' considering `the proofs as a whole.'" Close v. Kordulak Bros., 44 N.J. 589, 599, 210 A.2d 753 (1965) (citation omitted). In performing that function, we must give due weight to the compensation judge's "expertise in the field and his opportunity of hearing and seeing the witnesses." De Angelo v. Alsan Masons, Inc., 122 N.J.Super. 88, 89-90, 299 A.2d 90 (App.Div.), aff'd o.b., 62 N.J. 581, 303 A.2d 883 (1973). However, where the issue is a question of law, our review is de novo. Manalapan Realty v. Manalapan Twp. Comm., 140 N.J. 366, 378, 658 A.2d 1230 (1995) ("A trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference.").
When first signed into law, our Workers' Compensation Act made no provision for legal fees. Haberberger v. Myer, 4 N.J. 116, 121, 71 A.2d 717 (1950) (citing L. 1911, c. 95). Various amendments starting in 1913 made allowance for fees, which to this day are entirely "dependent upon the meaning of the language" of N.J.S.A. 34:15-26 and -64. Id. at 121-22, 71 A.2d 717. In 1950 the statutory language provided "when, however, prior to any hearing compensation has been offered or paid, the reasonable allowance" was to be based upon the benefits obtained in excess of the offer. Id. at 121, 71 A.2d 717. The Court concluded that a respondent "may refrain from making an offer of settlement until immediately `prior to any hearing' and thus diminish or entirely defeat the award of fees to a petitioner's attorney, despite the rendition of services in preparation of his client's case for hearing." Id. at 124, 71 A.2d 717. Because the making of policy was for the Legislature, the Court enforced the statute, observing that "[l]awyers who accept employment under statutes regulating the allowance of fees for their services do so subject to the provisions of such statutes." Id. at 125, 71 A.2d 717.
*1005 The Legislature then amended the statute in 1952 to preclude respondents from defeating awards of attorney fees with eleventh-hour offers to pay benefits. L. 1952, c. 318, § 1. We considered the Haberberger decision as instrumental in this amendment. Seitz v. The Singer Mfgr. Co., 36 N.J.Super. 546, 550, 116 A.2d 641 (App.Div.1955). As amended, the statute provided "[w]hen, however, at a reasonable time, prior to any hearing compensation has been offered and the amount then due has been tendered in good faith or paid, the reasonable allowance" was to be based upon the benefits obtained in excess of the offer. L. 1952, c. 318, § 1 (emphasis added).
We construed these amendments in 1955. Davala v. Am. Bridge Co., 36 N.J.Super. 274, 115 A.2d 581 (App.Div. 1955). We concluded that more was required by the 1952 amendments than a "mere `offer' of compensation prior to hearing," which had previously been sufficient. Id. at 278, 115 A.2d 581. We specifically found that the prior legislative policy "was altered by the added requirement, as to time of overture, that it be reasonable." Ibid. This was based on the Governor's conditional veto and the legislative response in amending the bill. Id. at 279, 115 A.2d 581. We held, "It is thus clear that where the amount to be paid is for a permanent disability in a lump sum, as here, it being then all `due,' the legislative intent is that the amount be `tendered in good faith,' not merely offered." Ibid. We viewed the amendment as "afford[ing] greater protection to attorneys representing compensation claimants who may have invested substantial time and effort in a matter prior to the making of an offer by a respondent." Ibid. As a result, we required "literal compliance by the employer with the statute." Id. at 280, 115 A.2d 581. We held that a mere offer was not a tender and that "[t]he tender must be unconditional." Ibid.
That same year we considered the issue of what was a "reasonable time" under the statute as amended. Seitz, supra, 36 N.J.Super. at 550, 116 A.2d 641. We observed that the respondent knew of the total disability two or three months before tendering eighty percent of total compensation. Id. at 550, 116 A.2d 641. Furthermore, it was aware that a peremptory trial date was set for June 25, 1954, but waited until July 15, 1954, to make tender or payment. Ibid. We concluded that the offer was not "a bona fide offer to settle the matter within a reasonable time, as provided by statute." Id. at 551, 116 A.2d 641. In so holding, we observed:
The aforesaid R.S. 34:15-64, as amended, is for the protection of attorneys and their fee. Since no notice was given to counsel and the offer made only two working days before the hearing, this court is not of the opinion that the statutory requisite of "a reasonable time" had been complied with. Were we to hold otherwise, such a belated offer would still circumvent the amended statute and the attorneys would be back where they were before the amendment was enacted.
Since the statute in question was enacted for the benefit of the attorneys it must be construed as such and with an eye to their benefit.
[Ibid.]
It was not long before the Supreme Court had an opportunity to consider the statute as amended in 1952. Moore v. Magor Car Corp., 27 N.J. 82, 141 A.2d 536 (1958). The Court opined,
In our judgment, the appraisal of the legislative language must be made in the light of the basic duty imposed upon the employer by the act in its entirety. After adequate notice of a covered work *1006 connected accident and resulting disability, the obligation of the employer or the insurance carrier is to pay promptly the benefits provided by the legislative mandate and to continue to do so during the full period of temporary and permanent incapacity. Refusal or failure to comply with this affirmative obligation for an unreasonable period justifies the engagement of an attorney and the invocation of the formal procedure for adjudication of the rights of the parties.
[Id. at 86-87, 141 A.2d 536 (citations omitted).]
The Court then focused on the statutory language and punctuation:
It will be observed that in the amended section quoted above we have emphasized the two commas which [surround "at a reasonable time"]. If the intention was to require the right to counsel fee to be determined solely by the length of the period between the offer and the formal hearing, the structure of the sentence probably would have been: "When, however, at a reasonable time prior to any hearing compensation has been offered" etc. But when a comma was inserted after "at a reasonable time," the intention and effect undoubtedly were to impart broader significance to the phrase. Punctuation is part of an act and may be considered in its interpretation. As a consequence, it seems plain that the interval intended to be regarded in judging whether a tender of compensation was made with reasonable dispatch, depends upon the circumstances of the case. And the reasonableness of the interval must be gauged in the light of the employer's burden to undertake payment of benefits, or to tender them, at a reasonable time after he acquires notice of his liability, and before any hearing.

[Id. at 87, 141 A.2d 536 (emphasis added) (citations omitted).]
Thus, the measure of a reasonable time begins with the date of notice of a compensable accident and resulting disability. Id. at 88, 141 A.2d 536.
The Court concluded on the facts of the case before it that there was no justification for the termination of compensation benefits when the petitioner returned to work because the respondent admitted that he had a total loss of vision in his right eye. Id. at 90, 141 A.2d 536. It was not until eleven weeks after he returned to work that the respondent tendered total permanent disability. Ibid. The Court affirmed our earlier conclusion, Moore v. Magor Car Corp., 47 N.J.Super. 425, 432-33, 136 A.2d 31 (App.Div.1957), that the limitation contained in N.J.S.A. 34:15-64 did not preclude the attorney from receiving a full fee. Moore, supra, 27 N.J. at 90, 141 A.2d 536.
The Supreme Court considered the subject statute again the following year. Coponi v. Fed. Indus., 31 N.J. 1, 155 A.2d 1 (1959). The Court observed:
Thus the legislators ordained further that if an offer to pay compensation is made prior to the hearing and within a reasonable time after the liability becomes or should have become known to the employer, and the amount then due is tendered in good faith, the fee awarded shall be based only upon the amount recovered, if any, in excess of the offer, subject, of course, to the 20% limitation. [Id. at 6-7, 155 A.2d 1 (citations omitted) (emphasis added).]
The Court determined that the amended statute was "designed to impose upon the employer the duty to make an unconditional and unqualified offer to pay compensation and to express it in terms that leave no room for misunderstanding." Id. at 7, 155 A.2d 1.

*1007 Compliance is so readily communicable that any language in an answer to a petition for compensation which is at all doubtful, or which necessitates inference or deduction to support its unconditional quality, must be suspect in the matter of good faith. And proper regard for the overall objectives of the act demands that doubts be resolved in favor of the petitioner.
[Ibid.]
The Court concluded that a mere admission as to the extent of disability in the respondent's answer to the petition did not "constitute such an offer as would deprive the attorney of a fee for his labors predicated upon the full compensation award." Id. at 8, 155 A.2d 1. The Court also adhered to the measure of timeliness set forth in Moore because payment was made one month after the petitioner was examined by the respondent's physician and the percentage of disability was not disclosed until two months after that examination. Id. at 9-10, 155 A.2d 1. The Court held that the statutory requirement "for a proffer of compensation within a reasonable time before the hearing was not satisfied," in part because the petitioner remained uninformed respecting the basis of the compensation. Id. at 10, 155 A.2d 1.
The respondent in Coponi had argued that recent amendments to the Workers' Compensation Act impacted the determination of reasonableness under N.J.S.A. 34:15-64 because N.J.S.A. 34:15-16, amended effective January 1, 1957, imposed no obligation on the respondent "to offer to pay any specific percentage of permanent disability until after 26 weeks from the date of Coponi's last active medical treatment or until after 26 weeks from the date of his return to work, whichever was earlier." Ibid. N.J.S.A. 34:15-16 provided in pertinent part that:
"permanent disability, total or partial, shall not be determined or awarded until after 26 weeks from the date of the employee's final active medical treatment, or until after 26 weeks from the date of the employee's return to work, whichever is earlier, . . . except in cases of amputation or enucleation or death from other cause within that time and except when earlier determination of permanent disability is waived by the employer or his insurance carrier. Nothing herein contained shall prevent an employer or his insurance carrier from paying permanent disability compensation voluntarily prior to the expiration of the 26 week period."
[Coponi, supra, 31 N.J. at 11, 155 A.2d 1 (quoting N.J.S.A. 34:15-16) (emphasis in original).]
The Coponi Court concluded that it was not necessary to reach this issue because the respondent in its answer to the petition admitted to the percentage of disability and did not avail itself of the waiting period in N.J.S.A. 34:15-16. However, the Court cautioned, "[a]ttention should be given also to the fact that it may play a role in determining whether an offer was made within a reasonable time." Id. at 11, 155 A.2d 1.[3]
We again considered N.J.S.A. 34:15-64 in 1977. Gromack v. Johns-Manville Prods. Corp., 147 N.J.Super. 131, 370 A.2d 882 (App.Div.1977). We observed that delay *1008 in admitting liability was generally not a factor to be considered in determining a reasonable fee except where the respondent sought to limit the petitioner's attorney fee to twenty percent or less of the difference between a benefit offer and award. However, we held that even where no such limitation was sought,
[U]nreasonable and unjustified delay in admitting liability may be given consideration in the allocation of the attorney's fee granted as between the employer and the petitioner. Where the judge of compensation is satisfied that there has been such undue delay, he is warranted, in the exercise of discretion, in increasing the portion of the total fee payable by the employer to reflect that fact. The statute does not preclude such action.
[Id. at 135-36, 370 A.2d 882 (citations omitted) (emphasis added).]
The Workers' Compensation Act was amended again two years after our decision in Gromack. L. 1979, c. 283, § 16. Generally, the purpose of the revisions was to "make available additional dollars for benefits to seriously disabled workers while eliminating, clarifying or tightening awards of compensation based upon minor permanent partial disabilities not related to the employment." Senate Labor, Industry and Professions Committee, Joint Statement to S. 802 and A. 840 (November 13, 1979).
Among the multiple changes to the Workers' Compensation Act, the exception to a full award of attorney fees under N.J.S.A. 34:15-64 was amended to provide:
When, however, at a reasonable time, prior to any hearing compensation has been offered and the amount then due has been tendered in good faith or paid within 26 weeks from the date of the notification to the employer of an accident or an occupational disease or the employee's final active medical treatment or with 26 weeks after the employee's return to work whichever is less or within 26 weeks after employer's notification of the employee's death, the reasonable allowance for attorney fee shall be based upon only that part of the judgment or award in excess of the amount of compensation, theretofore offered, tendered in good faith or paid.
[N.J.S.A. 34:15-64.]
In discussing this amendment the Joint Statement observed that "[t]he bill would limit the base upon which to determine attorney fees, to be paid by the worker or his dependents and by the employer, to the amount awarded beyond an employer's offer, providing that offer was made within designated time frames." State Labor, Industry and Professions Committee, Joint Statement to S. 802 and A. 840, supra (emphasis added). The Senate Amendments stated that the amendments "[l]imit the period in which attorney's fees are not allowed." Senate Amendments to Senate Committee, S. 802 (December 3, 1979). Finally, Governor Byrne commented that: "[t]he period in which an employer may offer a settlement has been limited to six months after notification, final medical treatment or return to work (whichever is later), rather than up to the final hearing date." Press Release, Governor Brendan Byrne Signed S. 802 (Jan. 10, 1980) (on file with S. 802).
Significantly, the Legislature retained the commas surrounding "at a reasonable time," which the Moore Court found so pivotal in determining the proper interpretation of the statute. We assume that the Legislature was thoroughly conversant with this judicial construction and acquiesced in this decision by retaining the commas. See Barringer v. Miele, 6 N.J. 139, 144, 77 A.2d 895 (1951).
*1009 The issue presented to us in Miller v. Joseph Savino & Son, Inc., 259 N.J.Super. 425, 426, 614 A.2d 160 (App.Div.1992), certif. denied, 133 N.J. 431, 627 A.2d 1137 (1993), was whether the respondent's "offer of compensation for 100% of the right eye and tender of the amount then due to petitioner was made within a reasonable time within the scope and intendment of N.J.S.A. 34:15-64," thus precluding an award of fees on the portion of the final award related to the right eye. In that case, an employee sought additional medical treatment after receiving temporary benefits and filing a petition for workers' compensation. Id. at 427, 614 A.2d 160. The hearing was adjourned. Ibid. A subsequent examination found total disability and the employer immediately tendered a check. Id. at 428, 614 A.2d 160.
In applying N.J.S.A. 34:15-64 to these facts, we concluded that the "offer of compensation was unconditional and made in good faith." Id. at 429, 614 A.2d 160. We also held that the "request for further medical treatment . . . extended the time within which respondent could make an offer of compensation and a good faith tender of payment of the amount then due under N.J.S.A. 34:15-64." Id. at 429-30, 614 A.2d 160.
We found this result consistent with the 1979 amendment to the statute "because petitioner requested further medical treatment, respondent's offer of compensation was reasonable even though it was made after the expiration of all of the 26 week periods set forth in the statute." Id. at 430, 614 A.2d 160. We held:
If further treatment is requested, an employer should be afforded reasonable time to conduct further medical examinations and determine whether such treatment is necessary. If the treatment is necessary it should be provided. Therefore, the request for further treatment must extend the time within which an offer of compensation and tender of payment may be made under the statute.
[Id. at 431, 614 A.2d 160.]
By contrast, in Gorman v. Waters & Bugbee, Inc., 374 N.J.Super. 513, 514-15, 865 A.2d 735 (App.Div.2005), we found that an offer of compensation made twenty-seven weeks after the date of the petitioner's final active medical treatment was untimely. There, petitioner was still undergoing medical treatment at the time the twenty-six week deadline expired. Id. at 515, 865 A.2d 735. The first hearing was adjourned due to the continuing treatment. Ibid. A second hearing, scheduled within the extended deadline, was adjourned because the petitioner received no medical evaluations. Ibid. Respondent did not make a voluntary payment until one week after the final deadline had elapsed. Id. at 516, 865 A.2d 735. The parties reached an agreement at a hearing about nine months later. Ibid.
First, we construed Miller, supra, 259 N.J.Super. at 429, 614 A.2d 160, to stand for the proposition that adjourned pretrial hearings were not to be used to measure the timeliness of a voluntary offer and tender of benefits. Gorman, supra, 374 N.J.Super. at 518, 865 A.2d 735. We held that
An adjournment of a case because the parties are not in a position to present proofs on the extent of a petitioner's injury does not constitute a hearing. Put another way, the mere listing of a case to track its progress or to hold a status conference is not a hearing. Where, however, the parties have assembled their medical proofs on the extent of petitioner's disability, and are in a position to proceed to trial, the scheduled court proceeding may be the equivalent of a hearing even were no hearing *1010 begun which, for example, could be the result of the court's own trial schedule. We merely provide these parameters as guidelines to conform to the scheduling of cases in the Workers' Compensation venue.
[Ibid.]
After discussing the legislative history of N.J.S.A. 34:15-64 prior to 1979, we addressed the most recent amendments to the statute:
In 1979, the Legislature amended the statute again to its present form. While the Legislature retained the language that the voluntary tender be made at a reasonable time prior to any hearing, the statute expressly required that the amount offered also "be tendered in good faith or paid within 26 weeks from" one of the following enumerated events, whichever is later: "the date of the notification to the employer of an accident," the date of the "employee's final active medical treatment," or the date the "employee[] return[ed] to work." N.J.S.A. 34:15-64.
. . . .
The obvious intent of this clause is to have a bright line timeframe within which the voluntary tender or payment may be made to reduce the amount which the employer will have to contribute toward petitioner's attorney fees. The advantage of a bright line rule is that the employer knows from certain dates the timeframe within which to make the payment to receive the reduction of its contribution to the attorney fees award.
[Id. at 519-20, 865 A.2d 735.]
We held that "the twenty-six week period marks the expiration of the last date at which time payment can be made if the employer is to benefit from a reduced contribution to the attorney fees award." Id. at 520-21, 865 A.2d 735. Accordingly, we concluded that the twenty-six-week period was a bright line rule and that it was not satisfied by the respondent's offer on February 3, 2003, twenty-seven weeks after the petitioner's last medical treatment. Id. at 521, 865 A.2d 735.
Recently, we considered N.J.S.A. 34:15-64 in Menichetti v. Palermo Supply Company, 396 N.J.Super. 118, 933 A.2d 16 (App.Div.2007). The petitioner was injured on October 7, 2005, and filed his claim petition one month thereafter. Id. at 121, 933 A.2d 16. Two days later he underwent knee surgery. Ibid. His last medical care was in December 2005. Ibid. On February 22, 2006, the respondent, before even having its medical expert examine petitioner, offered and paid an amount representing fifteen percent of partial disability. Ibid. The offer was not accepted and in June 2006 the respondent's expert opined that petitioner's disability was only seven and one-half percent. Ibid. Petitioner's expert, who examined him in August 2006, opined that the disability was forty-five percent. Ibid. By November 2006 the parties settled the extent of disability at twenty-two and one-half percent. Ibid.
The only issue submitted to the Workers' Compensation judge was the quantum of attorney fees. Ibid. The judge concluded that the offer was not made in good faith because the respondent had no medical basis for making the offer. Id. at 122, 933 A.2d 16. We concluded that there was no case law support for such an interpretation of the statute. Id. at 123, 933 A.2d 16. Because "[t]here [wa]s no claim in this case that the respondent waited an unreasonable amount of time before having petitioner examined or otherwise delayed unreasonably in making its offer," we reversed the fee award and remanded the case "for entry of an amended judgment giving the employer credit for the *1011 full statutory reduction to which it is entitled." Id. at 125, 933 A.2d 16.
We summarize this body of law for the benefit of workers' compensation judges considering awards of attorney fees as follows:
(1) N.J.S.A. 34:15-64 must be construed "in the light of the basic duty imposed upon the employer by the act in its entirety." Moore, supra, 27 N.J. at 86, 141 A.2d 536. That is, the employer must pay benefits promptly and continuously. Ibid.
(2) Literal compliance with N.J.S.A. 34:15-64 is required. Davala, supra, 36 N.J.Super. at 278, 115 A.2d 581.
(3) N.J.S.A. 34:15-64 "impose[s] upon the employer the duty to make an unconditional and unqualified offer to pay compensation and to express it in terms that leave no room for misunderstanding." Coponi, supra, 31 N.J. at 7, 155 A.2d 1.
(4) The offer must be made (a) at a reasonable time after notice of injury and extent of disability, (b) prior to any hearing and (c) prior to the expiration of the applicable twenty-six-week period. Twenty-six weeks is not a per se reasonable time; it is only a cut-off. A reasonable time might be much less.
(5) The phrase "prior to any hearing," means a scheduled court appearance at a point in time when the parties have assembled their medical proofs on the extent of petitioner's disability and are in a position to proceed to trial, whether or not they actually proceed.
(6) The twenty-six-week cutoff may not be extended in the case of death caused by the compensable event, although it may be extended where medical treatment for a nonfatal injury restarts after the cutoff.
(7) Whether or not the reduced-fee exception to a full attorney fee applies, unreasonable and unjustified delay in admitting liability may be considered on the allocation of an attorney fee between the petitioner and respondent.
With these principles in mind, it becomes readily apparent that the compensation judge did not consider all of the relevant facts of the case in order to determine whether the twenty-five-week delay between the date of death and the payment of benefits was reasonable and he did not make fact-findings. He did not determine whether payment of benefits occurred "prior to any hearing," N.J.S.A. 34:15-64, i.e., a scheduled court appearance at a point in time when the parties have assembled their proofs of dependency and are in a position to proceed to trial, whether or not they actually proceeded. Gorman, supra, 374 N.J.Super. at 517, 865 A.2d 735. Although he made a finding on the good faith of J & J, that finding was not made in the context of the apparent merit of Aaliyah's claim to greater benefits based on her total dependency on Rafael. That finding must be reconsidered. As a consequence, we reverse the order allowing a $50 fee and remand the matter to the compensation judge for specific fact findings, and reconsideration in light of this opinion. Aaliyah's attorney may apply at that time for an allowance of fees in connection with this appeal.
In the event the compensation judge determines that the respondent is entitled to the statutorily reduced fee, he must then reconsider the award of only $50. Our research has found only one case in New Jersey in which a court determined the effect of rival claims for dependency benefits. Shuler v. E. Foundry, Inc., 34 N.J.Super. 216, 111 A.2d 802 (Co.Ct.Law Div.1955), was decided after the 1952 amendment but before the 1979 amendment. *1012 There, two alleged widows claimed benefits for themselves and for two of each of the bigamist decedent's four children. Id. at 217, 111 A.2d 802. The respondent, which had originally paid benefits to the first of the widows to make a claim, terminated payments to her upon presentation of the claim from the other widow and her two children. Id. at 218, 111 A.2d 802. The respondent admitted responsibility to pay dependency benefits in its answer to the second petition subject to "a judicial determination as to the identity of the legal widow of the decedent." Ibid. Ultimately, the compensation judge allowed benefits to the second widow and the four dependent children, with an award of fees to the attorney for the second widow.
On review, the Law Division judge observed that the purpose of the statute was to encourage voluntary payments at a reasonable time prior to trial, which permits the respondent to avoid attorney fees, benefits the petitioners with "prompt receipt of compensation," and spares the agency "unnecessary waste of time and expense." Id. at 220, 111 A.2d 802. The judge concluded that respondent's decision to withhold benefits entirely until a judicial determination of entitlement thereto "negate[d] the contemporary existence of an outstanding offer or tender that could be acted upon by the parties to whom it was directed" and thus no benefits were tendered in good faith or paid. Id. at 221, 111 A.2d 802. The judge concluded:
In the absence of a bona fide offer or tender the attorneys for the petitioners had no alternative but to continue the prosecution of their clients' claims. Without litigation the petitioners might have waited in vain for the compensation from a respondent paralyzed by the peril of double liability.
[Ibid.]
The Law Division affirmed the award of fees to the petitioner's attorney.
In determining the reasonable amount of an attorney fee for Aaliyah's attorney, the compensation judge must measure the difference between the amount of dependency benefits paid voluntarily to Aaliyah, not all three daughters, and the amount of dependency benefits awarded to Aaliyah, not all three daughters, under the settlement, i.e., 16.67% of the gross award to Aaliyah. This is so because an employer will have no incentive to resolve conflicting dependency claims on their merits if all it is required to do to avoid paying more than $50 to the petitioner's attorney is make a pro rata payment of benefits to all claimants within a reasonable time prior to any hearing but no later than twenty-six weeks after death. Because there was, and is, a duty to pay, the respondent must be required to investigate the dependency claims, make a reasonable determination of entitlement to benefits and make payments that represent an equitable allocation among the competing petitioners.
We agree with the Law Division judge in Shuler that entitlement to benefits is "as vital an issue as would have been employment status or extent of disability." Ibid. As there, Aaliyah's attorney had no alternative but to continue the prosecution of her claim when J & J did not allocate the benefits based on the extent of each daughter's dependency. In the case of death benefits, if the entitlement to a reduced attorney fee is measured by the respondent's gross liability to all claimants, no attorney for competing petitioners would ever receive more than a $50 fee, no matter how good the result for his or her client. This result is utterly inconsistent with the Legislature's efforts over the years to restrict the employer's ability to unfairly secure for itself the benefit of a reduced or no fee for a petitioner's attorney *1013 who has invested significant time and effort on his client's behalf.
Thus, we hold that where competing claims for dependency benefits arise, "the reasonable allowance for attorney fee shall be based upon only that part of the judgment or award [in favor of each petitioner] in excess of the amount of compensation, theretofore offered, tendered in good faith or paid [to that petitioner]". N.J.S.A. 34:15-64(c). In no case shall the award be limited to $50 except when the amount "offered, tendered in good faith or paid" to the petitioner is equal to or greater than the amount awarded to that petitioner.
Reversed and remanded to the Division of Workers' Compensation for further proceedings consistent with this opinion. We do not retain jurisdiction.
NOTES
[1] We have not been provided with a transcript of the proceedings on February 28, 2006, and thus cannot recite what occurred on that date.
[2] The record before us does not disclose whether any of these dates were adjourned or whether the attorneys appeared on any of them.
[3] The Law Division, in considering the Coponi decision, concluded that N.J.S.A. 34:15-16 did not "effect[] any essential change in the scope and application of N.J.S.A. 34:15-64." Allie v. Barrett & Co., Inc., 67 N.J.Super. 294, 300, 170 A.2d 534 (Co.Ct.Law Div.1961). The Law Division held that "[t]he reasonableness of an employer's course of action under all of the facts and circumstances found in a particular case still remains the criterion by which the right to abatement of counsel fee should be determined." Ibid.