ROBERT C. MOORE, PETITIONER-RESPONDENT, v. MAGOR CAR CORPORATION, RESPONDENT-APPELLANT.

Argued April 1, 1958—Decided May 19, 1958.

*Mr. Herman M. Wilson* argued the cause for petitioner-respondent.

*Mr. Isidor Kalisch* argued the cause for respondent-appellant.

The opinion of the court was delivered by

FRANCIS, J.   Certification was granted in this matter 25 *N. J.* 539, to review the adequacy of the fee allowed to petitioner's counsel for services rendered in the Workmen's Compensation Division.

The award of attorneys' fees in workmen's compensation proceedings at the hearing level is regulated by statute. Under *N. J. S. A.* 34:15–64 a reasonable fee not exceeding

20% of the judgment may be allowed, subject to the limitation which is the source of this controversy and which will be discussed later.

One of the major objectives of the Workmen's Compensation Act was to provide a speedy and efficient partial substitute for wages when an employee suffers a work connected injury. It was recognized that when disabling mishaps occur, many employees with families to support are without financial reserves to sustain them either during the period of temporary disability or thereafter if the injury results in a permanent lessening of physical capacity for work. And manifestly the legislative purpose was to create benefits which would issue automatically and promptly according to the specifications of the statute. After the waiting period, *N. J. S. A.* 34:15-14, payments are to be made for the duration of temporary disability and afterward, without cessation, for any sequential permanent disfunction, *N. J. S. A.* 34:15-16. The basic idea was to avoid the disaster that delay might bring to the workman and his family, or the loss of self-respect that the necessity of appeal for public relief might visit upon them. Compensation was to be a benefit earned. It was to be a matter of right and not of grace or related in any way to the dole.

The Legislature was aware that *bona fide* disputes would arise both as to liability and as to extent of disability. So a tribunal was created for the adjudication of such controversies, and procedures were established regulating the manner of presenting them. However, the legislative attention was so focused upon payment of benefits with dispatch that by a 1927 amendment attorneys were undesignedly treated unfairly. The act ordained that:

"When, however, prior to any hearing compensation has been offered or paid, the reasonable allowance for attorney fee shall be based upon only that part of the judgment or award in excess of the amount of compensation theretofore offered or paid." *L.* 1927, *c.* 324.

As a result, no matter how unmindful an employer was of his obligation or how tardy he was in making payments,

he could diminish or defeat an award of counsel fees simply by tendering an offer of settlement immediately "prior to any hearing." And no matter how much time, effort or expense the workman's attorney had put into the prosecution of the action, no counsel fee could be allowed, accepted or privately contracted for. *Haberberger v. Myer*, 4 *N. J.* 116 (1950); *N. J. S. A.* 34:15–26.

The Legislature, sensitive to the inequitable decision which the court was compelled to reach in the *Haberberger* case, revised the section and cast it in the following form:

"When, however, at a reasonable time, prior to any hearing compensation has been offered and the amount then due has been tendered in good faith or paid, the reasonable allowance for attorney fee shall be based upon only that part of the judgment or award in excess of the amount of compensation, theretofore offered, tendered in good faith or paid." *L.* 1952, *c.* 318. (Emphasis added.)

What is the full and fair significance of this amendment? Does the new condition requiring payment at a reasonable time relate only to the period after the filing of the petition for compensation between the offer of payment and the date of any hearing? Or does it contemplate the time between the date when the obligation of the employer to pay benefits became reasonably determinable and the date of any hearing? The County Court, in *Tluzek v. Federal Leather Co.*, 43 *N. J. Super.* 269, 272 (*Cty. Ct.* 1957), confined the test to the former period. No other decision has been found which considers the problem specifically. Study has led us to the conclusion that the *Tluzek* construction is too restrictive.

In our judgment, the appraisal of the legislative language must be made in the light of the basic duty imposed upon the employer by the act in its entirety. After adequate notice of a covered work connected accident and resulting disability, the obligation of the employer or the insurance carrier is to pay promptly the benefits provided by the legislative mandate and to continue to do so during the full period of temporary and permanent incapacity. *Cf. Daigle v. Great American Indemnity Co.*, 70 *So. 2d* 697, 702 (*La.*

*Ct. App.* 1954). Refusal or failure to comply with this affirmative obligation for an unreasonable period justifies the engagement of an attorney and the invocation of the formal procedure for adjudication of the rights of the parties.

Manifestly, the lawmakers had a dual purpose in promulgating the 1952 amendment. One was to give greater protection to the claimant's attorney who invests substantial time and effort in his client's cause prior to the offer to pay compensation. *Davala v. American Bridge Co.*, 36 *N. J. Super.* 274, 279 (*App. Div.* 1955). The other was to create additional incentive for a prompt response by the employer to the workman's claim for benefits. Thus, the more liberal provision for remuneration for professional services rendered must be administered with an eye to the timely character of the employer's performance in discharging his duty.

It will be observed that in the amended section quoted above we have emphasized the two commas which mark out the new matter. If the intention was to require the right to counsel fee to be determined solely by the length of the period between the offer and the formal hearing, the structure of the sentence probably would have been: "When, however, at a reasonable time prior to any hearing compensation has been offered" etc. But when the comma was inserted after "at a reasonable time," the intention and effect undoubtedly were to impart broader significance to the phrase. Punctuation is part of an act and may be considered in its interpretation. *State by Richman v. Sperry & Hutchinson Co.*, 23 *N. J.* 38, 46 (1956); *Weinacht v. Board of Chosen Freeholders of County of Bergen*, 3 *N. J.* 330, 334 (1949); *Sutherland, Statutory Construction* (3d ed. 1943), § 4939. As a consequence, it seems plain that the interval intended to be regarded in judging whether a tender of compensation was made with reasonable dispatch, depends upon the circumstances of the case. And the reasonableness of the interval must be gauged in the light of the employer's burden to undertake payment of benefits, or to tender them, at a reasonable time after he acquires notice of his liability, and before any hearing.

No hard and fast rule can be laid down as to the inception point of the period by which payment at a reasonable time before hearing is to be tested. Generally speaking, it would begin when notice is received of a compensable accident and resulting temporary disability (beyond the waiting period). It would continue thereafter from the time of acquisition of reasonable notice of permanent incapacity throughout the number of weeks designated by the statute as payment for such incapacity. If payments were not begun as required or if they were improperly or inexcusably terminated prematurely, the time of such failure would mark the beginning of the interval to be utilized in determining whether the subsequent tender by the employer or the carrier was made "at a reasonable time." Such a construction is the only one which is entirely compatible with the spirit, policy and beneficent social purpose of the entire legislative scheme.

Application of this interpretation to the present case necessitates an examination of the facts. Moore sustained a compensable injury to his right eye on October 10, 1955. Respondent had immediate notice and promptly furnished emergency medical care. Admission to the hospital occurred two days later where an eye specialist performed an operation for a retinal detachment on October 25, 1955. The patient was discharged on November 9 as improved and thereafter continued under the observation of the original treating physician. On December 13, the specialist re-examined Moore and sent a formal report dated December 16 to the insurance carrier. Among other things, it said:

"I believe that Mr. Moore has received the maximum benefit from operative procedure. The prognosis for this case was very poor from the onset. He now has a complete retinal detachment and I do not believe he is a candidate for further surgery at this time. There is 100% schedule loss of vision and the prognosis for the return of vision is very poor. * * *."

As the result of a recommendation by the doctor, Moore returned to work on January 4, 1956. Compensation for

temporary disability was paid through the date of return. Then it ceased. No explanation was given.

Some time later he engaged counsel. The exact date does not appear but the record shows that an eye specialist examined Moore on February 9, 1956, at the attorney's request. A petition for compensation was filed on the next day, February 10, and was served on respondent on March 14. The answer was filed on March 26; a compensable accident was admitted and as to the "Nature of injury and resultant permanent disability," the reply given was "100% loss of right eye." However, no express offer to pay benefits representing that loss was included. On March 21 respondent mailed to Moore a check for $360, bearing the notation "Wages to 3-28-56." No letter accompanied it. At the hearing, the explanation was that it represented payment for 12 weeks' benefits at $30 weekly covering the period from January 5, the day after the return to work, to March 28. So the facts detailed demonstrate that petitioner's compensation had not been paid for over five weeks when the formal action was instituted and that, in all, respondent's obligation was ignored for 11 weeks until the March 21 check was mailed. No testimony was adduced to explain the delay.

After the $360 check, respondent continued to remit compensation weekly through the date of final hearing. A pretrial conference was held on July 13, 1956. At this time, petitioner's attorney had a medical report dated February 18, 1956, showing total loss of the right eye, and another of May 14, 1956, indicating a neurological disability of 5% of total. Respondent then had two reports in addition to that of December 16, 1955; one of February 14, 1956 (almost six weeks after Moore returned to work) from another eye specialist confirming the diagnosis of total loss of the eye; the second of June 12, 1956, from a neurologist containing the opinion of an existing neurological disability of 3% of total. During the conference, respondent for the first time made an express offer to pay on the basis of 100% loss of the eye. (In view of the construction of the statute

detailed above, it is not necessary to consider whether the statement in the answer and the check of March 28, 1956, constituted an unqualified tender in good faith within its meaning.) Despite the possession of the report of its own physician, no offer was made to compensate for the neurological disability. As the result, the matter went to formal hearing.

At the conclusion of the hearing, an award was granted for 100% loss of the eye and 5% of total permanent disability on account of a neurosis. However, the deputy director concluded that an offer to pay benefits for total loss of the eye had been made in good faith prior to the hearing and that therefore the attorney's fee should be based solely on the sum involved in the recovery for neurological disability, that is, $825. And he granted a fee of $160 thereon, which the County Court affirmed. The Appellate Division reversed and remanded to the Division for the grant of a fee founded on the total award for eye and neurological incapacity, namely, 177½ weeks at $30 weekly.

The record presented to us reveals no justification for the termination of compensation benefits when Moore returned to work. Nor does any excuse appear for continuance of the failure to pay for the next five weeks before the petition was filed or thereafter for six additional weeks until March 21, when the $360 check was mailed. The 11-week period of silence, to a workman who had lost his eye, beginning as it did on his resumption of work, must have had an ominous portent for him. Disregard of, or failure to perform, the known positive and affirmative duty to pay compensation for the perdurable loss (which went without testimonial explanation at the hearing) provided ample basis for the retention of an attorney and the filing of a formal complaint. Under all of the circumstances, in our judgment the offer to pay for the eye disability was not made at a reasonable time. It follows, therefore, that a counsel fee measured by the total benefits for such disability should have been granted in the Division.

Accordingly, the judgment of the Appellate Division is affirmed and the matter is remanded to the Division for such purpose.

*For affirmance*—Chief Justice WEINTRAUB, and Justices WACHENFELD, BURLING, JACOBS, FRANCIS and PROCTOR—6.

*For reversal*—Justice HEHER—1.