PETER COPONI, PETITIONER-APPELLEE, v. FEDERAL IN-
DUSTRIES, A DIVISION, RESPONDENT-APPELLANT.

Argued September 29, 1959—Decided October 26, 1959.

(1)

2

4

*Mr. Ralph G. Conte* argued the cause for petitioner-appellee (*Messrs. Marinello, Cundari & Soriano,* attorneys).

*Mr. Edward B. Meredith* argued the cause for respondent-appellant.

The opinion of the court was delivered by

FRANCIS, J. This is a workmen's compensation case. The sole issue is the propriety of the counsel fee allowed to petitioner's attorney.

Petitioner suffered a compensable injury to his right arm on September 18, 1956. Compensation for temporary disability was duly and regularly paid for a period of 43 weeks, until July 15, 1957. Respondent's orthopedic specialist examined Coponi on June 18 and shortly thereafter (the exact date not appearing in the record) submitted a report containing his evaluation of permanent disability. On July 19 payment of compensation for permanent disability was begun by check bearing the designation "permanent compensation." Such checks continued regularly without cessation throughout the proceedings. They did not specify the

basis or percentage of permanent loss of the arm on which the payments were being made. Nor were the checks accompanied by any letter furnishing such information.

Petitioner resumed working on August 5. Apparently there was some disagreement as to when the period of temporary disability ended, because compensation benefits therefor were terminated on July 15 and respondent asserted in its answer to Coponi's subsequent formal petition for compensation that he was able to return to work on July 16. At the later settlement hearing, it was agreed that 2-6/7 additional weeks were due. That fact, however, plays no material part in the controversy to be resolved.

The formal petition was filed on July 23, 1957. An answer conceding that Coponi had suffered a compensable accident was signed on August 7 and filed on August 16. Question 11 on the form and the answer are:

"11. Nature of injury and resultant permanent disability.
 60% of right arm."

Thereafter, following a pretrial conference, the petition was amended to include a claim for neurological disability.

On November 22 the extent of petitioner's permanent disability was fixed by consent of the parties, as follows: 70% loss of the right arm, 5% of total on account of neurological disfunction, and 2½% of total for abdominal scarring due to two skin graft operations. The Deputy Director approved the settlement and entered judgment awarding compensation for such disability for a total of 251¼ weeks at $30 per week or $7,537.50, less the payments already made.

With respect to counsel fee, the Deputy Director concluded that the statement in respondent's answer that the "resultant permanent disability" was "60% of right arm" coupled with the delivery of the first of the checks to which reference has been made, constituted an offer to pay compensation on that basis. Accordingly, he held that under

*N. J. S. A.* 34:15–64 the fee should be allowed only on the part of the award which exceeded 60% loss of the arm, *i.e.,* on the compensation representing the additional 10% impairment and the 7½% of total permanent disability for the other conditions. These benefits totalled $2,137.50, and if that sum alone controlled, no fee in excess of 20% could be granted. *N. J. S. A.* 34:15–64. An allowance of $375 was made, $200 to be paid by respondent and $175 by petitioner.

On appeal, the County Court held that the reference in respondent's answer to 60% loss of the arm did not reach the stature of an offer to pay benefits measured thereby. Therefore, he computed the fee on the basis of the total recovery and allowed $1,250, $500 payable by petitioner and $750 by respondent. The Appellate Division agreed, and we granted certification. 29 *N. J.* 277 (1959).

Some objections of a procedural character have been raised to the consideration of the problem. All of the tribunals below dealt with the matter on its merits and we have concluded to do likewise. It was not suggested in the briefs or at the oral argument that the fee allowed had been agreed upon by the parties subject to the Deputy Director's approval prior to the entry of the consent judgment.

The Legislature, recognizing the need for and the value of the services of members of the bar in the prosecution of certain workmen's compensation claims, has provided for the discretionary allowance of a reasonable attorney's fee, not exceeding 20% of the judgment. Cognizance was taken also of the fact that in many instances the dispute between the employer and the employee is limited to the extent of disability emanating from the work connected injury. Thus the legislators ordained further that if an offer to pay compensation is made prior to the hearing and within a reasonable time after the liability becomes or should have become known to the employer, and the amount then due is tendered in good faith, the fee awarded shall be based only upon the amount recovered, if any, in excess of the offer,

subject, of course, to the 20% limitation. *N. J. S. A.* 34:15–64; *Moore v. Magor Car Corp.,* 27 *N. J.* 82 (1958).

The statute possesses a dual function. It is designed to give protection to an attorney who invests substantial time and effort in the employee's claim, and to stimulate the full, fair, unqualified and timely discharge of the employer's obligation to pay compensation. Accomplishment of these objectives can be brought about only by an interpretation which gives full force to the lawmakers' language. The requirement for the offer of compensation (that is, the amount of benefits or the percentage of disability which the employer concedes, subject to *N. J. S. A.* 34:15–16, to be discussed later) and the tender "in good faith" of the sum then due represents the measure of the duty imposed. The obligation to make a good faith tender is not limited to the mere delivery of cash or a check for any benefits then due; it cannot be considered as a separate and distinct matter. The real significance must be gathered from the context, that is, in relation to and in characterization of the nature of the offer to pay compensation. The two factors manifestly were designed to impose upon the employer the duty to make an unconditional and unqualified offer to pay compensation and to express it in terms that leave no room for misunderstanding. Controversies in this area have reached the appellate courts because experienced practitioners before the Division have differed reasonably as to whether the statutory mandate had been satisfied by the form in which the alleged offer was couched. Such difficulties should not exist. Compliance is so readily communicable that any language in an answer to a petition for compensation which is at all doubtful, or which necessitates inference or deduction to support its unconditional quality, must be suspect in the matter of good faith. And proper regard for the overall objectives of the act demands that doubts be resolved in favor of the petitioner.

In the present case, the efficacy of respondent's alleged offer must be tested by these considerations. Its answer

admitted a compensable accident and said that the "Nature of injury and resultant permanent disability" were "60% of right arm," but contained no indication of offer to pay benefits on that basis. If the statement had continued: "Respondent offers to pay compensation based on such disability and has paid to date and is continuing to pay on that basis," (putting aside the question of whether the offer was made within a reasonable time prior to the hearing), could there be any doubt about compliance with the statute? Or if it had said: "We consent to the entry of judgment for compensation representing such disability, subject to the approval of the Division, and we have paid benefits to date on that basis"? If an unqualified intention existed to offer payment for 60% loss of the arm, why was it not executed by unmistakable expression? Surely lack of linguistic facility is not the answer.[1]

▇ Under the circumstances, we hold the view that the statement appearing in respondent's answer did not constitute such an offer as would deprive the attorney of a fee for his labors predicated upon the full compensation award. If our determination is criticized as imposing a common-law-like formalism on the employer, the answer must be that the subject matter demands it. In the administration of this section of the Workmen's Compensation Act, no room

---

[1]Reference to some aspects of administration of the Compensation Act shows that in the handling of voluntary settlements between the parties where no formal proceedings are instituted, greater certainty as to the understanding is demanded than that which is indicated by the alleged offer in respondent's answer. The old Form No. 3 which was promulgated by the Bureau (as it was then called) for use in settlements of that type (and which still appears to be used by some employers) contained these questions:

"32. Did any Permanent injury result from *this* accident * * *?
. . . . . . . . . . . . . . . . . . . .
33. State fully the nature of *such* permanent injury. (Emphasis added.)
* * * * * * * *
40. Give Total compensation for permanent injury.
. . . . . . . . . . . . . . . . . . . ."

should be left even for those who "in the way of bargain" will "cavil on the ninth part of a hair." *Shakespeare, King Henry* IV, *Part.* I, *Act* iii, *Sc.* I.

■ Moreover, even assuming that a statutory offer was made, it did not meet the standard set out in *Moore v. Magor Car Corp., supra,* with respect to timeliness. Respondent had Coponi examined to determine permanent disability on June 18, 1957. The transmission of checks bearing the notation "permanent compensation" began on *July 19* and continued thereafter. Nowhere is it suggested that any of them or any letter or notice accompanying them set forth the percentage of disability on which the payments were being made. The injured workman was left in the dark as to that fact. Respondent's brief says that "around June 20" the physician's report containing his estimate of disability was received. It is not in the record, nor was the doctor asked as to the date when called as a witness. Further, no mention of the date was made by counsel on the extensive argument of the motion to increase the counsel fee which took place 42 days after the original consent judgment— although the subject of the doctor's examination and the

---

On the right side of the form at the end of the questions the following statement appears:

"The undersigned hereby affirms the correctness of the statements given, and guarantees the paying of compensation according to law, for the permanent injury stated herein."

Immediately below is a line for the signature of the employer or the insurance carrier. On the left side is a line for the signature or mark of the employee, above which he agrees to accept "compensation as herein set forth." If the employee refuses to sign, the fact is noted and the form then filed with the Division. *R. S.* 34:15–98. The Rules of the Division of Workmen's Compensation filed in the office of the Secretary of State on October 11, 1954, also adopted the form and specified that the "Extent of temporary and permanent disability should be explicitly stated." (*page* 3) The more recently issued Form WC–3 calls for the inclusion of the same material and guaranty of payment. Study of these forms and the practice represented thereby furnishes evidence of the specificity which ought to attend the type offer to pay compensation which is now under consideration.

time when made was discussed. The fair inference is that if the report had not been received within a few days of the doctor's visit, the fact would have been stated or the report produced. It is undisputed that the estimate of 60% loss of the arm was made at that time. Subsequently, down to July 22, when the formal petition was sworn to, no offer based on any fixed percentage of disability was presented to Coponi. The alleged offer appeared for the first time in respondent's answer, filed on August 16, 1957. Accepting the inference that the evaluation of disability by the examining physician reached respondent on or about June 20, the alleged offer was not made for at least seven weeks thereafter. And this interval does not take into account the period between the date of execution of the answer, August 7, 1957, and the receipt thereof by petitioner's attorney. The date of service (which had to be some time after August 16, see *R. S.* 34:15–52) does not appear in the record. On these facts, the requirement of the statute for a proffer of compensation within a reasonable time before the hearing was not satisfied.

Respondent advances the additional argument that by reason of the amendment to *N. J. S. A.* 34:15–16, which became effective on January 1, 1957, it was under no obligation to offer to pay any specific percentage of permanent disability until after 26 weeks from the date of Coponi's last active medical treatment or until after 26 weeks from the date of his return to work, whichever was earlier. The effect of this enactment on liability for counsel fees has not been considered previously by the courts.

*N. J. S. A.* 34:15–16 contemplates that after the waiting period payment of compensation to the injured workman shall be made for the duration of the temporary disability and afterward without cessation for the sequential permanent incapacity. *Moore v. Magor Car Corp., supra.* The amendment added the following with respect to payments for permanent disability:

"* * *, except that permanent disability, total or partial, shall not be determined or awarded until after 26 weeks from the date of the employee's final active medical treatment, or until after 26 weeks from the date of the employee's return to work, whichever is earlier, * * * except in cases of amputation or enucleation or death from other cause within that time and *except when earlier determination of permanent disability is waived by the employer or his insurance carrier*. Nothing herein contained shall prevent an employer or his insurance carrier from paying permanent disability compensation voluntarily prior to the expiration of the 26 week period."

██ It is not necessary in this proceeding to discuss generally the impact of the language on counsel fee allowances. In the case before us, respondent in the answer admitted that 60% permanent loss of the arm existed and no request or demand was included that the determination or award of compensation await the passage of the 26 weeks. Such action must be deemed a waiver within the legislative intendment.

██ The observation may be made that the statute does not proscribe the filing of a formal petition for compensation within the 26-week period. Attention should be given also to the fact that it may play a role in determining whether an offer was made within a reasonable time. In this connection, when an employer in due course begins to make weekly payments on permanent disability, his duty is not fully discharged simply by forwarding a check bearing the legend "permanent compensation." The employee remains uninformed as to the basis on which he is being compensated. Has his permanent disability become fixed and thus capable of being estimated? Is he being given benefits in consequence of such an estimate by the employer's physician and is the check a tender indicative of an undertaking to pay for a fixed amount of disability? Is the situation such that the permanent disability cannot be accurately gauged at the time, but the payments are in contemplation of adjustment to the disability when it becomes capable of definite ascertainment? Fairness requires that such relevant information be furnished along with the installment remittances.

Otherwise the extent of the injured man's monetary recovery remains shrouded in doubt and that doubt inevitably will breed adversary proceedings.

For the reasons stated, the judgment of the Appellate Division is affirmed.

WEINTRAUB, C. J. (concurring). I believe there was an offer within the meaning of the statute. The answer admitted every allegation pertinent to liability. That being so, the statement of the amount of disability necessarily was an admission of liability in the stated amount. An offer to pay is plainly implicit in the admission. The addition of "we offer" would have added nothing of legal consequence. With or without those words, respondent could have amended if the facts warranted that course. The petition and answer are streamlined forms prepared by the Division rather than the litigants. There is no question addressed to the specific subject of "offers." It seems to me that when the approved form is completed and reveals the amount of undisputed liability, it would exalt mere form to require an explicit statement of what is necessarily implicit.

I join in the balance of the majority opinion.

PROCTOR and HALL, JJ., join in this concurring opinion.

WEINTRAUB, C. J., and PROCTOR and HALL, JJ., concurring in result.

*For affirmance*—Chief Justice WEINTRAUB, and Justices BURLING, JACOBS, FRANCIS, PROCTOR, HALL and SCHETTINO—7.

*For reversal*—None.