SYLLABUS

This syllabus is not part of the Court's opinion. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Court and may not summarize all portions of the opinion.

**In the Matter of Proposed Construction of Compressor Station (CS327)**
**(A-24-23) (088744)**

**Argued May 2, 2024 -- Decided August 6, 2024**

**NORIEGA, J., writing for a unanimous Court.**

In this appeal, the Court interprets N.J.S.A. 13:20-28(a)(11) (Exemption 11), a section of the Highlands Water Protection and Planning Act (Highlands Act) that exempts from the Act and its regulations projects that qualify as "routine maintenance and operations, rehabilitation, preservation, reconstruction, repair, or upgrade of public utility lines, rights of way, or systems, by a public utility, provided that the activity is consistent with the goals and purposes of this act." Specifically, the Court considers whether "routine" modifies only the term "maintenance and operations," or all activities identified within the exemption.

Tennessee Gas (Tennessee) owns and operates an interstate natural gas transmission system. As part of a project known as the "East 300 Upgrade Project," Tennessee proposed to install various compressor stations along its natural gas transmission system. Relevant here, Tennessee sought to construct a new compressor station and facility (Compressor Station 327) in West Milford Township, where Tennessee has an existing right-of-way on the site of a former quarry. Because Compressor Station 327 is located within the Highlands Preservation Area, an area that is subject to stringent environmental standards, Tennessee applied to the Department of Environmental Protection (DEP) for a Highlands Applicability Determination (HAD). Tennessee's HAD application requested an exemption from the Highlands Act on the ground that Compressor Station 327 qualified for Exemption 11. Tennessee also submitted a copy of the complete HAD application to the Highlands Water Protection and Planning Council (Highlands Council).

On October 16, 2020, the Highlands Council wrote to the DEP stating that it would not object to the issuance of a HAD under Exemption 11 for this project, noting that Tennessee's "efforts to avoid, minimize and mitigate . . . resource impacts are sufficient to find that the project is consistent with the goals of the Highlands Act," especially because Compressor Station 327 would fall within a "historically disturbed" former quarry site where "[c]ritical wildlife habitat areas are disconnected and non-functional." The DEP issued the HAD in June 2021.

1

Food & Water Watch appealed the DEP's HAD, arguing that Exemption 11 must be narrowly construed such that the word "routine" modifies the word "upgrade." The Appellate Division agreed, vacating the HAD and remanding the matter to consider whether Compressor Station 327 qualifies as a "routine upgrade." 476 N.J. Super. 556, 574 (App. Div. 2023).

The Court granted certification. 256 N.J. 350 (2024).

**HELD:** Based on the plain language deliberately crafted by the Legislature, read in context with the law as a whole, "routine" modifies only "maintenance and operations" and does not modify the remaining activities.

1. The Highlands Act is a comprehensive environmental statute that aims to protect and preserve the Highlands region's exceptional natural resources while simultaneously recognizing that appropriate development in this region must occur to serve the best interests of this State. Before any major development occurs in the Highlands preservation area, an entity must seek either a HAD or Highlands Preservation Area Approval from the DEP. N.J.A.C. 7:38-2.2; N.J.S.A. 13:20-30(a). The Highlands Act creates certain exemptions from the requirements of the Act, the regional master plan, and any permitting rules or regulations imposed by the DEP. N.J.S.A. 13:20-28; N.J.A.C. 7:38-2.3(a). At issue here is Exemption 11. (pp. 14-17)

2. Although the DEP, in accordance with the Appellate Division's decision, has issued a new HAD authorizing Compressor Station 327 to qualify for Exemption 11 as a "routine upgrade," this matter is not moot because the Highlands area has been declared a matter of great public importance, N.J.S.A. 13:20-2, and because a current challenge to the "routineness" of Tennessee's proposed project is being held at the appellate level. (pp. 17-18)

3. Turning therefore to the language of Exemption 11, the Court notes that it contains three components. First, an activity must either be "routine maintenance and operations, rehabilitation, preservation, reconstruction, repair, or upgrade." Second, that activity must be conducted by a public utility to its lines, rights of way, or system. Third, the activity must be consistent with the goals of the Highlands Act. This appeal focuses on the first element, and whether "routine" modifies "maintenance and operations" or whether it modifies the entire series of exempt activities, including "upgrade." The activities in Exemption 11 are designed to distinguish two distinct circumstances: (1) those that are "routine," as signaled by the conjunctive phrase "maintenance and operations," and (2) those that are responsive to triggering events, which follow a comma and include the disjunctive "or." By their very nature, "maintenance and operations" are activities that would both inherently occur on a periodic or "routine" basis. Conversely, Exemption 11's remaining activities all would occur on an as-needed basis after a triggering event,

2

making them distinct from "routine maintenance and operations." The plain language of Exemption 11 leads us to conclude that "routine" modifies only "maintenance and operations" and does not modify "upgrade." For that reason, the Court reverses the judgment of the Appellate Division. (pp. 18-22)

4. The Court adds that the first statutory requirement for Exemption 11 is met here. See N.J.S.A. 13:20-28(a)(11). The second requirement -- that the action be performed "by a public utility" -- is undisputed here. Ibid. As for the third requirement -- "that the activity is consistent with the goals and purposes of [the Highlands A]ct," see ibid. -- the Appellate Division did not reach it because of its holding regarding the word "routine." 475 N.J. Super. at 571-72. The Court provides guidance upon remand, noting that just as any activity must be undertaken by a public utility to qualify for Exemption 11, so too must any activity, routine or not, be consistent with the goals and purposes of the Highlands Act for the exemption to apply. The goals of the preservation area are chiefly to promote preservation and conservation, N.J.S.A. 13:20-10(b)(1) to (8), but the final goal explicitly states that development should be limited to the maximum extent possible when it is "incompatible with preservation of this unique area," id. at (9). In determining whether construction of Compressor Station 327 is consistent with the Highlands Act's "goals and purposes," see N.J.S.A. 13:20-28(a)(11), it will be necessary to consider the circumstances of the project, including the fact that Compressor Station 327 is being built upon already disturbed lands that are unsuitable for vegetation and wildlife, among other arguments. (pp. 22-24)

**REVERSED and REMANDED.**

**CHIEF JUSTICE RABNER and JUSTICES PATTERSON, SOLOMON, PIERRE-LOUIS, and WAINER APTER join in JUSTICE NORIEGA's opinion. JUSTICE FASCIALE did not participate.**

3

SUPREME COURT OF NEW JERSEY
A-24 September Term 2023
088744

In the Matter of
Proposed Construction
of Compressor Station (CS327),
Office Building and Appurtenant
Structures, Highlands Applicability
Determination, Program
Interest No.: 1615-17-0004.2
(APD200001).

On certification to the Superior Court,
Appellate Division, whose opinion is reported at
476 N.J. Super. 556 (App. Div. 2023).

Argued                    Decided
May 2, 2024          August 6, 2024

Christine A. Roy argued the cause for appellant
Tennessee Gas Pipeline Company, LLC (Rutter & Roy,
attorneys; Christine A. Roy, Richard G. Scott, and
Monica N. Stahl, on the briefs).

Daniel A. Greenhouse argued the cause for respondents
Food & Water Watch, New Jersey Highlands Coalition,
and Sierra Club (Eastern Environmental Law Center,
attorneys; Daniel A. Greenhouse, on the brief).

Jason Brandon Kane, Deputy Attorney General, argued
the cause for respondent New Jersey Department of
Environmental Protection (Matthew J. Platkin, Attorney
General, attorney; Sookie Bae-Park, Assistant Attorney
General, of counsel, and Jason Brandon Kane, on the
briefs).

1

David R. Kott argued the cause for amicus curiae New Jersey Business & Industry Association (McCarter & English, attorneys; David R. Kott and Leroy E. Foster, of counsel and on the brief).

JUSTICE NORIEGA delivered the opinion of the Court.

The Highlands Water Protection and Planning Act (Highlands Act), N.J.S.A. 13:20-1 to -35, subjects certain development projects to a stringent permitting scheme implemented and enforced by the New Jersey Department of Environmental Protection (DEP). If, however, a proposed project meets certain requirements, it may be exempt from the Highlands Act and its regulations in their entirety. For public utility projects, the Highlands Act exempts those activities that qualify as "routine maintenance and operations, rehabilitation, preservation, reconstruction, repair, or upgrade of public utility lines, rights of way, or systems, by a public utility, provided that the activity is consistent with the goals and purposes of this act." N.J.S.A. 13:20-28(a)(11).

In this appeal, we address a question of statutory interpretation: whether "routine" modifies only the term "maintenance and operations," or modifies all activities identified within the exemption. Based on the plain language deliberately crafted by the Legislature, read in context with the law as a whole, we conclude that "routine" modifies only "maintenance and operations" and

2

does not modify the remaining activities. We therefore reverse the judgment of the Appellate Division and remand the matter for further proceedings.

## I.

## A.

Tennessee Gas (Tennessee) is a Delaware limited liability company and a natural gas company as defined by Section 2(6) of the Natural Gas Act (NGA), 15 U.S.C. § 717a(6). Tennessee owns and operates an interstate natural gas transmission system, subjecting it to the Federal Energy Regulatory Commission's (FERC) regulatory authority.

Tennessee and Consolidated Edison (ConEd) executed a binding twenty-year agreement for firm transportation service.[1] In recent years, ConEd has faced a growing demand for natural gas resulting in a temporary moratorium on natural gas connections to new customers. ConEd requested that Tennessee help end the moratorium by providing 115,000 dekatherms per day of firm transportation capacity to its customers in Westchester County, New York. To meet this demand for increased capacity, Tennessee proposed its "East 300 Upgrade Project," which received a Certificate of Public Necessity by FERC

---

[1] When a pipeline offers firm transportation service, it means that delivery of the natural gas is guaranteed to the energy supplier. See United Distrib. Cos. v. FERC, 88 F.3d 1105, 1123 n.10 (D.C. Cir. 1996).

as required by 15 U.S.C. § 717f.[2] FERC's approval of Tennessee's project was supported by FERC's findings that the "project will not have adverse impacts on existing . . . pipelines and their existing customers"; that the "benefits will outweigh any adverse economic effects on landowners and surrounding communities"; and Tennessee's Environmental Impact Statement, as required by 42 U.S.C. § 4332(C), concluded that "no alternatives present[ed] a significant advantage over the proposed [p]roject."

As part of the "East 300 Upgrade Project," Tennessee proposed to install various compressor stations along its natural gas transmission system, the "300 Line," in order to move natural gas through its system and maintain such increased flow rates. Relevant here, Tennessee sought to construct a new compressor station and appurtenant facility (Compressor Station 327) in West Milford Township, where Tennessee has an existing right-of-way on the site of a former quarry. That new station would consist of a 19,000-horsepower electric motor-driven turbine compressor unit.

---

[2] Issuance of a Certificate of Public Necessity requires FERC to engage in a robust analysis of whether "the applicant is able and willing properly to do the acts and to perform the service proposed" in compliance with the NGA and FERC's requirements and whether the proposed project "is or will be required by the present or future public convenience and necessity" by considering the market need, the public interests at stake, and the environmental impacts of the proposed project. 15 U.S.C. § 717f(e); see also Sierra Club v. FERC, 867 F.3d 1357, 1373 (D.C. Cir. 2017).

4

Because Compressor Station 327 is located within the Highlands Preservation Area, an area that is subject to stringent environmental standards, N.J.S.A. 13:20-2, Tennessee applied to the DEP for a Highlands Applicability Determination (HAD) on August 28, 2020. Tennessee's HAD application requested an exemption from the Highlands Act on the ground that Compressor Station 327 qualified for Exemption 11, N.J.S.A. 13:20-28(a)(11). Tennessee also submitted a copy of the complete HAD application to the Highlands Water Protection and Planning Council (Highlands Council).

Notice of Tennessee's HAD application was published on the DEP's Bulletin on September 23, 2020. In a joint comment submitted during the public comment period, Food & Water Watch, the New Jersey Highlands Coalition, and the Sierra Club (collectively, Food & Water Watch) opposed the proposed construction. They asserted that Compressor Station 327 would not constitute a "routine maintenance or upgrade of utility lines or systems," but would be "a massive expansion of operations in the protected Highlands Region." Food & Water Watch also objected because Tennessee's project was to "build[] a new facility to push more gas through pipelines that go to New York," therefore having "no benefit [to] the people of" New Jersey.

On October 16, 2020, the Highlands Council wrote to the DEP stating that it would not object to the issuance of a HAD under Exemption 11 for this

5

project.  The Highlands Council specifically noted that Tennessee's "efforts to avoid, minimize and mitigate . . . resource impacts are sufficient to find that the project is consistent with the goals of the Highlands Act," especially because Compressor Station 327 would fall within a "historically disturbed" former quarry site where "[c]ritical wildlife habitat areas are disconnected and non-functional."

The DEP issued the requested HAD in June 2021, determining that Compressor Station 327 met the definition of a "Major Highlands Development" under N.J.A.C. 7:38-1.4, but the project did not need to be regulated by the Highlands Act because it qualified for Exemption 11 and was consistent with the Statewide Water Quality Management Plan rules as required by N.J.A.C. 7:38-2.4(a).

B.

On August 13, 2021, Food & Water Watch appealed the DEP's HAD, arguing that Exemption 11 must be narrowly construed such that the word "routine" modifies the word "upgrade."[3]  The Appellate Division agreed,

---

[3]  Tennessee was not initially named as a party to Food & Water Watch's appeal.  It moved to intervene pursuant to Rule 4:33-1, but the Appellate Division denied its motion.  In re Proposed Constr. of Compressor Station (CS327), 250 N.J. 365, 366 (2022).  We granted Tennessee's petition for certification and remanded the matter because Food & Water Watch "should have included Tennessee as an 'interested party' pursuant to [Rule 2:5-1(b)(3)]

vacating the HAD issued to Tennessee and remanding the matter to consider whether Compressor Station 327 qualifies as a "routine upgrade." In re Proposed Const. of Compressor Station, 476 N.J. Super. 556, 574 (App. Div. 2023).

The Appellate Division began its analysis by noting that Exemption 11 was susceptible to more than one interpretation and was, therefore, ambiguous. Id. at 567. Employing the series-qualifier canon of statutory construction, the court determined that the word "'routine' modifies each noun in the list of exempt activities," and declined to give weight to the Legislature's use of punctuation. Id. at 568 & n.10. The Appellate Division explained that it relied on two interpretive principles -- that statutory exemptions must "be strictly but reasonably construed" and that "effectuating the legislative plan" was of paramount concern. Id. at 569 (first quoting Serv. Armament Co. v. Hyland, 70 N.J. 550, 558-59 (1976); and then quoting Chasin v. Montclair State Univ., 159 N.J. 418, 426-27 (1999)).

The Appellate Division acknowledged that the Highlands Act's purpose was to limit developmental sprawl and subject all major development projects in the Preservation Area "to stringent water and natural resource protection

when they filed their initial Notice of Appeal and Case Information Statement in the Appellate Division." Id. at 368.

7

standards, policies, planning, and regulation," while "limit[ing] to the maximum extent possible construction or development which is incompatible with preservation." Id. at 569 (first quoting N.J.S.A. 13:20-2; and then quoting N.J.S.A. 13:20-10(b)(9)). Applying the interpretive principles outlined above, as well as its interpretation of the Highlands Act's purpose, the appellate court determined it was "compelled to interpret exemptions from the [Highlands] Act narrowly." Ibid.

The Appellate Division held that "routine" must modify "upgrade," otherwise "upgrade," standing alone, would be at odds with the remainder of Exemption 11's activities. Id. at 570. The court relied on noscitur a sociis, a maxim invoked in statutory interpretation that means "a word is known by the company that it keeps." Ibid. (quoting Jarecki v. G. D. Searle & Co., 367 U.S. 303, 307 (1961)). The appellate court explained that "allowing 'routine' to modify 'upgrade' . . . removes 'upgrade' from the status of an outlier and makes it consonant with 'maintenance and operations, rehabilitation, preservation, reconstruction, [and] repair,' N.J.S.A. 13:20-28(a)(11)," which the court found to be "powerful evidence . . . of the Legislature's intended scope of the word." Id. at 571 (alteration in original). The court rejected the DEP and Tennessee's argument that reading "routine" to modify each activity would lead to an absurd result because every activity in Exemption 11, routine

8

or not, must otherwise be consistent with the intent of the Highlands Act. Id. at 572-73. Emphasizing the Legislature's declared goal of maintaining "stringent water and natural resource protection standards, policies, planning, and regulation" in the Preservation Area, the Appellate Division found it dubious that the Legislature would intend for every upgrade proposed by a public utility to qualify for the exemption. Id. at 573-74 (quoting N.J.S.A. 13:20-2).

Finally, the Appellate Division did not resolve the parties' dispute about the meaning of a "routine upgrade" but instead remanded the matter to the DEP for a determination of whether Compressor Station 327 could qualify as a "routine upgrade" to Tennessee's pipeline system. Id. at 574.

We granted Tennessee's petition for certification. 256 N.J. 350 (2024). We additionally granted the motion of the New Jersey Business & Industry Association (NJBIA) to appear as amicus curiae.

II.

A.

Tennessee asks this Court to reverse the Appellate Division's judgment, arguing that the appellate court incorrectly interpreted the language of Exemption 11 when it sought to use "routine" as a limiting principle. Tennessee instead contends that the court should have looked at the rest of

9

Exemption 11's text, which requires that the activities listed under the exemption be performed by a public utility to its "lines, rights of way, or systems" and that the activity must be consistent with the goals and purposes of the Highlands Act. Tennessee advances that the plain, dictionary meaning of "routine" -- "of common place or repetitious character" -- fits with "maintenance and operations" because those activities occur periodically, as opposed to Exemption 11's other activities that may happen on an as-needed basis. Tennessee also submits that pairing "routine" with the remaining terms in the list renders the word "and" between "maintenance and operations" surplusage. Lastly, Tennessee argues that the DEP's decision was entitled deference based on its experience and judgment, which has led to its consistent interpretation of Exemption 11 to mean that "routine" modifies only "maintenance and operations."

The DEP also submits that the only logical reading of Exemption 11 is to apply "routine" to "maintenance and operations" because that reading comports with the grammatical structure of the statute. The DEP adds that the Legislature intended to effectuate the Highlands Act's environmentally protective purpose by conditionally exempting the activities in Exemption 11 if they are consistent with the Highlands Act, which the DEP assesses in consultation with the Highlands Council. The DEP contends that the

10

Legislature accounted for public utilities' need to engage in certain, non-routine maintenance and operations by including a series of non-routine restorative activities. The DEP avers that, at least for statewide public utilities, the Board of Public Utilities would be the more appropriate agency to determine whether a proposed activity would qualify as one that is routine. Finally, the DEP argues that its interpretation was not unreasonable, and thus should have been afforded deference.

NJBIA echoes the grammatical reading presented by Tennessee and the DEP concerning Exemption 11. It contends that applying "routine" to modify each activity in Exemption 11 does not further the Highlands Act's purpose because the Legislature understood that certain infrastructure and public utilities projects will occur. NJBIA further explains that the Legislature, in enacting the Highlands Act, sought to balance competing interests between development and environmental protection, which is why there are seventeen specified exemptions.

B.

Food & Water Watch asks this Court to affirm the Appellate Division's reading of Exemption 11 because it was construed narrowly to protect environmental interests. It contends that "routine" must modify "upgrade," as well as the remainder of Exemption 11's activities, under a strict interpretation

11

mandated by M. Alfieri Co., Inc. v. N.J. DEP, 269 N.J. Super. 545, 554 (App. Div. 1994). Moreover, Food & Water Watch argues that reading the Exemption under the maxim noscitur a sociis furthers the Legislature's intent because it could not have intended to authorize non-routine upgrades.

Food & Water Watch additionally proposed, for the first time at oral argument, that the activities enumerated by Exemption 11 were drafted in reference to already-existing structures at the time the Highlands Act was enacted. Therefore, Food and Water Watch argues, the cost and magnitude of Tennessee's proposed project could never qualify as a "routine upgrade," and Tennessee's project should instead be subject to the Highlands Act's stringent permitting requirements.

III.

A.

An agency decision "will be sustained unless there is a clear showing that it is arbitrary, capricious, or unreasonable, or that it lacks fair support in the record." Mount v. Bd. of Tr., PFRS, 233 N.J. 402, 418 (2018) (quoting Russo v. Bd. of Tr., PFRS, 206 N.J. 14, 27 (2011)). Reviewing courts, however, are not """bound by an agency's interpretation of a statute or its determination of a strictly legal issue," particularly when "that interpretation is inaccurate or contrary to legislative objectives."" Id. at 418-19 (quoting

12

Russo, 206 N.J. at 27).  "Like all matters of law, we apply de novo review to an agency's interpretation of a statute or case law."  Russo, 206 N.J. at 27.

B.

1.

When it conducts statutory interpretation, "this Court aims to effectuate the Legislature's intent."  W.S. v. Hildreth, 252 N.J. 506, 518 (2023).  The "'best indicator' of legislative intent 'is the statutory language.'"  Ibid. (quoting State v. Lane, 251 N.J. 84, 94 (2022)).  We will "ascribe to the statutory words their ordinary meaning and significance and read them in context with related provisions so as to give sense to the legislation as a whole."  DiProspero v. Penn, 183 N.J. 477, 492 (2005).  "If the Legislature's intent is clear from the statutory language and its context with related provisions, we apply the law as written."  Shelton v. Restaurant.com, Inc., 214 N.J. 419, 429 (2013).

"[O]nly when the statute is ambiguous, the plain language leads to a result inconsistent with any legitimate public policy objective, or it is at odds with the general statutory scheme," will we turn to extrinsic tools to determine legislative intent.  Ibid.  This Court, however, may not "rewrite a plainly-written enactment of the Legislature [or] presume that the Legislature intended something other than that expressed by way of the plain language."  O'Connell

13

v. State, 171 N.J. 484, 488 (2002).  When we interpret "exception[s] to the provisions of a comprehensive statutory scheme . . . [they] are to be <u>strictly but reasonably construed</u>, consistent with the manifest reason and purpose of the law."  <u>Hyland</u>, 70 N.J. at 558-59 (emphasis added).

Several other principles of statutory interpretation are relevant to this case.  "Words in a statute should not be read in isolation," and we "must consider the context" of the language used.  <u>Shelton</u>, 214 N.J. at 440.  We additionally strive to "avoid an interpretation that renders words in a statute surplusage" because courts "must assume that the Legislature purposely included every word."  <u>Id.</u> at 440-41.  Although punctuation "is not necessarily controlling in the search for legislative intent," <u>Perez v. Zagami</u>, 218 N.J. 202, 210 (2014), it nevertheless "is part of an act and may be considered in its interpretation," <u>Moore v. Magor Car Corp.</u>, 27 N.J. 82, 87 (1958).

2.

The Highlands Act is a comprehensive environmental statute that aims to protect and preserve the Highlands region's exceptional natural resources while simultaneously recognizing that appropriate development in this region must occur to serve the best interests of this State.  The statute provides that all measures undertaken with respect to the Highlands region

> should be guided, in heart, mind, and spirit, by an
> abiding and generously given commitment to

14

protecting the incomparable water resources and natural beauty of the New Jersey Highlands so as to preserve them intact, in trust, forever for the pleasure, enjoyment, and use of future generations while also providing every conceivable opportunity for appropriate economic growth and development to advance the quality of life of the residents of the region and the entire State.

[N.J.S.A. 13:20-2.]

The Highlands Act creates two areas within the Highlands region: a preservation area and a planning area. Id. at -7(b), (c). Both areas are subject to a regional master plan created by the Highlands Council. Id. at -8, -10. In the planning area, development is encouraged to be consistent with the Act's goals. Id. at -10(c). For projects in the preservation area, like Compressor Station 327, development is strictly regulated. Id. at -10(b). With respect to the preservation area, the Legislature declared that it is in the public interest to impose "stringent water and natural resources protection standards, policies, planning and regulation." Id. at -2.

The Highlands Act enables the DEP to promulgate rules and regulations establishing environmental standards for the Highlands preservation area and tasks the DEP with enforcing such standards. Id. at -32, -35. Additionally, the DEP works in tandem with the Highlands Council to ensure that projects seeking permits in the preservation area are consistent with the goals and requirements of the regional master plan. N.J.A.C. 7:38-1.1(i) to (l).

15

Before any major development occurs in the Highlands preservation area, an entity must seek either a HAD or Highlands Preservation Area Approval from the DEP. N.J.A.C. 7:38-2.2; N.J.S.A. 13:20-30(a). All decisions issued by the DEP under N.J.A.C. 7:38-2 must address (1) "[w]hether a proposed activity meets the definition of 'major Highlands development' as set forth in N.J.A.C. 7:38-1.4"; (2) "[w]hether a proposed activity is exempt from the requirements of the Highlands Act" under N.J.A.C. 7:38-2.3; and (3) "[w]hether a proposed activity is consistent with the applicable areawide Water Quality Management Plan adopted in accordance with N.J.A.C. 7:15." N.J.A.C. 7:38-1.1(c); accord id. at -2.4(a). Pertinent to the present matter, major Highlands development is defined to include "any non-residential development in the preservation area." N.J.S.A. 13:20-3; N.J.A.C. 7:38-2.2(a).

The Highlands Act creates certain exemptions from the requirements of the Act, the regional master plan, and any permitting rules or regulations imposed by the DEP. N.J.S.A. 13:20-28; N.J.A.C. 7:38-2.3(a). Here, we interpret Exemption 11, which excludes from the Highlands Act any "routine maintenance and operations, rehabilitation, preservation, reconstruction, repair, or upgrade of public utility lines, rights of way, or systems, by a public

16

utility, provided that the activity is consistent with the goals and purposes of" the Act. N.J.S.A. 13:20-28(a)(11).

## IV.

## A.

Before oral argument, the parties provided this Court with a procedural update indicating that the DEP issued a new HAD in accordance with the Appellate Division's decision. That new HAD authorized Compressor Station 327 to qualify for Exemption 11 as a "routine upgrade." Food & Water Watch appealed the DEP's decision arguing that the upgrade is not routine. At oral argument, we inquired whether this matter was moot.

An issue is moot "when [this Court's] decision sought in a matter, when rendered, can have no practical effect on the existing controversy." Redd v. Bowman, 223 N.J. 87, 104 (2015) (quoting Deutsche Bank Nat'l Tr. Co. v. Mitchell, 422 N.J. Super. 214, 221-22 (App. Div. 2011)). At oral argument, counsel for Tennessee clarified that HAD applications made by inter-and-intrastate public utility companies occur frequently. Furthermore, the DEP argued that although it was able to determine Compressor Station 327 qualified as a "routine upgrade" to satisfy the Appellate Division's precedential judgment in this matter, it may not be able to determine whether other activities undertaken by public utilities would similarly qualify. And the

17

determination that the upgrade in this case was "routine" could be overturned by the Appellate Division. Consequently, both because the Highlands area has been declared a matter of great public importance, N.J.S.A. 13:20-2, and because a current challenge to the "routineness" of Tennessee's proposed project is currently being held at the appellate level, this appeal presents a justiciable issue warranting this Court's resolution.

B.

Having decided that this matter is not moot, we turn to the language of Exemption 11.

Once again, N.J.S.A. 13:20-28(a)(11) exempts the following activities from the Highlands Act: "the routine maintenance and operations, rehabilitation, preservation, reconstruction, repair, or upgrade of public utility lines, rights of way, or systems, by a public utility, provided that the activity is consistent with the goals and purposes of this act." (emphases added).[4]

Exemption 11 thus contains three components. First, an activity must either be "routine maintenance and operations, rehabilitation, preservation, reconstruction, repair, or upgrade." Second, that activity must be conducted

_____

[4] A public utility is defined as an entity that owns, operates, or controls, among other things, a pipeline. N.J.S.A. 13:20-3; N.J.S.A. 48:2-13(a). Because the Legislature defined that term, we are bound by that definition, State v. S.B., 230 N.J. 62, 68 (2017), and it is undisputed here that Tennessee qualifies as a public utility.

18

by a public utility to its lines, rights of way, or system.  Third, the activity must be consistent with the goals of the Highlands Act.  This appeal focuses on the first element, and so we consider whether "routine" modifies "maintenance and operations" or whether it modifies the entire series of exempt activities, including "upgrade."

Because the Highlands Act and its regulations do not define the words "routine" or "upgrade," we afford those terms their "generally accepted meaning, according to the approved usage of the language."  N.J.S.A. 1:1-1.  We therefore turn to the dictionary for guidance.  "Routine" is defined as "of a commonplace or repetitious character" or "of, relating to, or being in accordance with established procedure."  Merriam-Webster's Collegiate Dictionary 1086 (11th ed. 2004).  The definition of "upgrade" is "to raise or improve the grade of[,] to raise the quality of[,] to extend the usefulness of[,]" or "to replace something . . . with a more useful version or alternative."  Id. at 1375.

Here, the Appellate Division employed the maxim of noscitur a sociis, "a word is known by the company it keeps," Jarecki, 367 U.S. at 307, to determine that "upgrade," standing alone, was an outlier that could not be limited sufficiently to effectuate the Legislature's intent of environmental protection without modification by "routine," Compressor Station, 476 N.J.

19

Super. at 570. Invocation of that maxim is appropriate only "where a word is capable of many meanings in order to avoid the giving of unintended breadth" to legislative acts. Jarecki, 361 U.S. at 307; see also S.D. Warren Co. v. Me. Bd. of Env't Prot., 547 U.S. 370, 378 (2006) (noting that the maxim is utilized "when a string of statutory terms raises the implication that 'words grouped in a list should be given related meaning'" (quoting Dole v. United Steelworkers of Am., 496 U.S. 26, 36 (1990)); Russell Motor Car Co. v. United States, 261 U.S. 514, 520 (1923) (utilizing the canon "where words are of obscure or doubtful meaning").

But it is not helpful "absent some sort of gathering with a common feature to extrapolate," S.D. Warren Co., 547 U.S. at 379-80, especially where the statute at issue contains a disjunctive "or," United States v. Lauderdale County, 914 F.3d 960, 967 (5th Cir. 2019). Here, the Legislature's sentence structure, use of punctuation, and word choice make use of this canon of interpretation unnecessary.

The activities in Exemption 11 are designed to distinguish two distinct circumstances: (1) those that are "routine," as signaled by the conjunctive phrase "maintenance and operations," and (2) those that are responsive to triggering events, which follow a comma and include the disjunctive "or." By their very nature, "maintenance and operations" are activities that would both

20

inherently occur on a periodic or "routine" basis, as Tennessee and the DEP articulated. Conversely, Exemption 11's remaining activities all would occur on an as-needed basis after a triggering event, making them distinct from "routine maintenance and operations."

For example, "routine" cannot modify "rehabilitation" or "repair" because the plain meaning of those terms imply that some <u>previous</u> degradation took place <u>triggering the need</u> for restoration.[5] And because a "routine" activity must be "commonplace" or "repetitious," a "repetitious restoration" is not a reasonable interpretation of the exemption.

Similarly, the series-qualifier canon is unsuitable here. This canon is generally employed when there is a modifying word or phrase that appears at the beginning of an uninterrupted list. <u>See</u> <u>Lockhart v. United States</u>, 577 U.S. 347, 364 (2016) (Kagan, J., dissenting) ("'When there is a straightforward, parallel construction that involves all nouns or verbs in a series,' a modifier at the end of the list 'normally applies to the entire series.'" (quoting Antonin Scalia & Bryan Garner, <u>Reading Law: The Interpretation of Legal Texts</u> 147 (2012))). Under Food & Water Watch's interpretation, "routine" would apply

---

[5] "Rehabilitation" is defined to mean "to restore to a former capacity" or "to bring to a condition of . . . useful and constructive activity." <u>Merriam-Webster's</u> at 1049. "Repair" means "to restore by replacing a part or putting together what is . . . broken." <u>Id.</u> at 1055.

21

to all the listed activities because the Legislature intended the "or" at the end of the list to be read as "and." But the statute's sentence structure does not support such an interpretation.

The punctuation used here is instructive. We generally "presume that the Legislature intended to follow accepted rules of grammar." State v. Ghandi, 201 N.J. 161, 179 (2010). Here, the Legislature mindfully placed "routine" immediately before two conjoined activities and separated those activities with a comma. If the Legislature intended "routine" to modify each activity, it could have written the statute as an uninterrupted series. It did not, and we cannot rewrite a statute or "presume that the Legislature intended something other than that expressed by way of the plain language." DiProspero, 183 N.J. at 492 (quoting O'Connell, 171 N.J. at 488).

The plain language of Exemption 11 leads us to conclude that "routine" modifies only "maintenance and operations" and does not modify "upgrade." For that reason, we reverse the judgment of the Appellate Division. We add that the first statutory requirement for Exemption 11 is met here. See N.J.S.A. 13:20-28(a)(11). The second requirement -- that the action be performed "by a public utility," is undisputed here. Ibid. As for the third requirement -- "that the activity is consistent with the goals and purposes of [the Highlands A]ct," see ibid. -- the Appellate Division did not reach it because of its holding regarding the word

22

"routine." See Compressor Station, 475 N.J. Super. at 571-72. We provide the following guidance upon remand.

Just as any activity must be undertaken by a public utility to qualify for Exemption 11, so too must any activity, routine or not, be consistent with the goals and purposes of the Highlands Act for the exemption to apply. There is no dispute that, as the Appellate Division stressed, the Highlands Act is intended to protect and preserve the pristine natural resources of the Highlands Region. N.J.S.A. 13:20-2. But the statute also recognizes "that residential, commercial, and industrial development, redevelopment, and economic growth" is in the best interests of this State. Ibid. Indeed, the Legislature further instructs that all activities undertaken in the region be committed to effectuating its environmentally protective purpose, "while also providing every conceivable opportunity for appropriate economic growth and development to advance the quality of life" in this State. Ibid. (emphasis added).

With respect to Compressor Station 327, it is undisputed that this project is within the preservation area, which is subject to "stringent water and natural resources protection standards, policies, planning and regulation." Ibid. The goals of the preservation area are chiefly to promote preservation and conservation, N.J.S.A. 13:20-10(b)(1) to (8), but the final goal explicitly states

23

that development should be limited to the maximum extent possible when it is "incompatible with preservation of this unique area," id. at (9) (emphasis added). Simply stated, the Highlands Act does not preclude development in this area; it limits only development that is incompatible with preservation and would therefore cause a decline in the environmental quality of the region.

In determining whether construction of Compressor Station 327 is consistent with the Highlands Act's "goals and purposes," see N.J.S.A. 13:20-28(a)(11), it will be necessary to consider the circumstances of the project, including the fact that Compressor Station 327 is being built upon already disturbed lands that are unsuitable for vegetation and wildlife, among other arguments Tennessee presents. We remand to allow for specific findings as to the consistency of the project within the Highlands Act.

In sum, we hold that "routine" does not modify every activity in Exemption 11. Because we resolved the matter through traditional means of statutory interpretation, we decline to reach the argument regarding deference to the DEP with respect to its interpretation of Exemption 11.

V.

For the foregoing reasons, we reverse the Appellate Division's judgment and remand the matter for further proceedings consistent with this opinion.

24

CHIEF JUSTICE RABNER and JUSTICES PATTERSON, SOLOMON, PIERRE-LOUIS, and WAINER APTER join in JUSTICE NORIEGA's opinion.  JUSTICE FASCIALE did not participate.